2002 UT App 345

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph MADSEN, Defendant and Appellant.**

No. 20010912–CA.

Court of Appeals of Utah.

Oct. 18, 2002.

Happy Morgan, Grand County Public Defender, Moab, and Sam N. Pappas, Rilling & Associates, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Joanne C. Slotnik, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges JACKSON, BENCH, and ORME.

## OPINION

JACKSON, Presiding Judge:

¶1 Madsen appeals his convictions for one count of damaging a jail, a third degree felony, in violation of Utah Code Ann. § 76-8-418 (1999), and one count of theft, a class B misdemeanor, in violation of Utah Code Ann § 76-6-404 (1999). We affirm.

## BACKGROUND

¶2 Prior to trial, the trial court heard arguments on Madsen's motion to prohibit unnecessary courtroom security. Madsen wore leg irons at that hearing, where Deputy Freestone testified that Madsen was a "management problem" at the jail, that he had been in numerous fights, and that his co-defendant had said he would attempt to escape if given the opportunity. The trial judge indicated that the leg irons were not visible due to an apron that was placed in front of Madsen's table to prevent the jury from viewing the irons. The court allowed Madsen to be seated prior to the jury's entrance to prevent the jury from viewing his leg irons. In the courtroom, the jury could see two uniformed guards, one placed behind the two defendants during trial.

¶3 At trial, Officer Butler improperly testified regarding previously excluded evidence. After trial, the court denied Madsen's motion for a mistrial and his request to postpone sentencing in order to obtain a presentence investigation report. Madsen appeals.

## ISSUES AND STANDARDS OF REVIEW

¶4 Madsen's first assignment of error is that the trial court allowed excessive courtroom security during his trial. He argues that he was thus denied his constitutional rights to a fair trial and the presumption of innocence. Accordingly, "we appl[y] close judicial scrutiny and review[ ] the trial court's decision for correctness." *State v. Kell*, 2002 UT 19, ¶11, 440 Utah Adv. Rep. 20, — P.3d ——, 2002 WL 193025.

¶ 5 Next, Madsen challenges the trial court's denial of his motion for a mistrial. "We review a trial court's denial of a motion for mistrial for abuse of discretion." *State v. Decorso*, 1999 UT 57, ¶ 38, 993 P.2d 837, *cert denied*, 528 U.S. 1164, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2000).

¶ 6 Finally, Madsen challenges the trial court's interpretation of Utah Code Ann. § 77–18–1 (Supp.2001). He contends that the trial court erroneously interpreted section 77–18–1 as giving the court discretion to deny the preparation of presentence reports. "We review for correctness a trial court's statutory interpretation, according it no particular deference. In interpreting a statute we give the words their usual and accepted meaning. We first examine the statute's plain language, resorting to other methods of statutory interpretation only if the language is ambiguous." *State v. Barrick*, 2002 UT App 120, ¶ 4, 46 P.3d 770 (quotations and citations omitted).

## ANALYSIS

### I. The Fairness of Madsen's Trial

¶ 7 Madsen first argues that by placing two uniformed guards in the courtroom, one of whom was directly behind him, and by allowing him to be shackled, "the trial court created an inherently prejudicial situation that violated his right to a fair trial." *State v. Daniels*, 2002 UT 2, ¶ 20, 40 P.3d 611. Regarding this right, the Utah Supreme Court in *Daniels* explained:

> The right to a fair trial is a fundamental constitutional right secured by the due process and equal protection guarantees of the Sixth and Fourteenth Amendments. Central to this right "is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of ... other circumstances not adduced as proof at trial." The presumption of innocence is a component of this guarantee of the right to a fair trial and has become a basic element of our criminal justice system. Even though the trial judge has broad latitude to control and manage the proceedings to

preserve the integrity of the trial process, when a courtroom action or arrangement is challenged as inherently prejudicial, we consider whether the practice presents an unacceptable risk of bringing into play impermissible factors that might erode the presumption of innocence. If the challenged practice is not inherently prejudicial, the judgment of the trial court will be affirmed. If the practice is inherently prejudicial, we must then consider whether the prejudicial practice is outweighed by any competing essential state interests.

*Id.* (quoting *Holbrook v. Flynn*, 475 U.S. 560, 567, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986) (internal citations omitted)). Thus, we first consider whether putting irons on Madsen's legs or the placement of the two uniformed guards in the courtroom was "inherently prejudicial, presenting an unacceptable risk of introducing impermissible factors that impinge upon the presumption of innocence." *Id.*

¶ 8 Visibly shackling a defendant is inherently prejudicial because it suggests to the minds of jurors that he is guilty, dangerous, or untrustworthy. *See Holbrook*, 475 U.S. at 568–69, 106 S.Ct. at 1345–46. However,

> if the jury cannot see the defendant's shackles, there can be no prejudice. *See, e.g., United States v. Mayes*, 158 F.3d 1215, 1226–27 (11th Cir.1998) ("The restraints in this case were not capable of affecting the jury's attitude in any way because the district court took great care to ensure that the jury never saw that the appellants were wearing leg irons."); *United States v. Brazel*, 102 F.3d 1120, 1158 (11th Cir.1997) ("Defendants, moreover, have not shown a realistic likelihood that they were prejudiced by what was done, the shackles having been screened from view.").

*Moon v. Head*, 285 F.3d 1301, 1317–18 (11th Cir.2002).

¶ 9 In the present case, Madsen does not allege or indicate record support for the proposition that the leg irons were visible to the jury.[1] Indeed, the record suggests the

---

1. He only speculates in his reply brief that "[t]he trial court's inability to see the shackles at one point during a pre-trial hearing is no guarantee that the jurors did not see the shackles."

opposite: an apron was placed in front of Madsen's table to prevent the jury from viewing his leg irons. Moreover, the trial judge indicated that they were not visible and allowed Madsen to be seated prior to the jury's entrance. Thus, inherent prejudice does not attach here.[2]

¶ 10 Madsen also argues that the placement of two uniformed guards in the courtroom was inherently prejudicial.

> In [*Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)], uniformed state troopers sat in the courtroom in addition to the regular security force, and the Supreme Court considered the range of inferences that a juror might reasonably draw from the presence of the officers in determining whether the practice was inherently prejudicial. The *Holbrook* Court explained that even though "it is possible that the sight of a security force within the courtroom might under certain conditions 'create the impression in the minds of the jury that the defendant is dangerous or untrustworthy,' " the presence of uniformed security personnel in a courtroom was different from shackling a defendant *and not inherently prejudicial* because of "the wider range of inferences that a juror might reasonably draw from the officers' presence."

*Daniels*, 2002 UT 2 at ¶ 24, 40 P.3d 611 (quoting *Holbrook*, 475 U.S. at 569, 106 S.Ct. at 1346 (emphasis added)). Madsen has not shown that a "wider range of inferences," *id.*, could not be reasonably drawn from the guards' presence. We also note that in the present case, "[t]he security was even less intrusive than that in [*Holbrook*], where the Court held that it was not prejudicial for four armed, uniformed state troopers to occupy the seats immediately behind the defendant." *State v. Gardner*, 789 P.2d 273, 281 (Utah 1989). Thus, the placement of the uniformed guards in the present case was not inherently prejudicial and did not "present[ ] an unacceptable risk of introducing impermissible factors that impinge upon the presumption of innocence." *Daniels*, 2002 UT 2 at ¶ 20, 40 P.3d 611. "Because we conclude that the practice[s] challenged in this case [were] not inherently prejudicial, we need not engage in a balancing of the risk of unfair prejudice against security interests in this case." *Id.* at ¶ 26. We conclude that the trial court did not err regarding courtroom security. Accordingly, we reject Madsen's challenge to the fairness of his trial.

## II.  Denial of Madsen's Motion for Mistrial

¶ 11 Next, Madsen contends that the trial court abused its discretion when it denied his motion for a mistrial. Madsen moved for a mistrial after Officer Butler improperly testified regarding a previously excluded fact, namely that Madsen was incarcerated in punitive isolation. The trial court ruled that Officer Butler's testimony was not sufficiently prejudicial to warrant a mistrial.[3]

¶ 12 " 'Unless a review of the record shows that the court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be

---

2.  Nevertheless, Madsen argues that the shackles were inherently prejudicial because they "not only risk inflaming jurors, but also ... are uncomfortable and distracting to defendants, who have constitutional rights to effectively defend themselves and consult with counsel." However, the inherent prejudice of shackling arises when "the practice presents an unacceptable risk of bringing into play impermissible factors that might erode the presumption of innocence." *State v. Daniels*, 2002 UT 2, ¶ 20, 40 P.3d 611. The presumption of innocence is eroded by factors that influence the jury's perceptions, not by the defendant's discomfort. *Cf. Holbrook v. Flynn*, 475 U.S. 560, 568–69, 106 S.Ct. 1340, 1345–46, 89 L.Ed.2d 525 (1986); *Moon v. Head*, 285 F.3d 1301, 1317–18 (11th Cir.2002). Thus, a defendant's discomfort or distractions do not necessarily inherently prejudice his right to a fair trial.

3.  The trial court stated that it had excluded this evidence because of its lack of probative value, not its prejudicial effect. Further, it noted "that the additional prejudice to these defendants from this coming out on top of everything else this jury's heard today is like tossing a—another ... shovel of manure in a great big cattle truck. I mean it is ... minimal, in comparison with what the rest of the things that the jury's heard." For example, Officer Meyer found a missing Polaroid camera on Madsen's person, which was engraved with the words "San Juan County Jail." Madsen became belligerent when confronted about the camera. Also, Madsen threatened to flood the top tier of the jail, that tier of the jail was later flooded, and Madsen's toilet was found to be plugged with "various cloth articles."

said to have had a fair trial, we will not find that the court's decision was an abuse of discretion.' " *State v. Decorso,* 1999 UT 57, ¶ 38, 993 P.2d 837 (quoting *State v. Robertson,* 932 P.2d 1219, 1231 (Utah 1997) (emphasis omitted)). Our review of the record reveals nothing that would support the assertion that Officer Butler's testimony " 'so likely influenced the jury that [Madsen] cannot be said to have had a fair trial.' " *Id.* (citation omitted). Thus, we cannot say that the trial court abused its discretion. Accordingly, we affirm the trial court's denial of Madsen's motion for a mistrial.

### III.  Necessity of Presentence Investigation Report

¶ 13 Finally, Madsen argues that the trial court erroneously interpreted Utah Code Ann. § 77–18–1(5) (Supp.2001) as giving the court discretion to deny the preparation of presentence investigation reports.[4] We "examine the statute's plain language, resorting to other methods of statutory interpretation only if the language is ambiguous." *State v. Barrick,* 2002 UT App 120, ¶ 4, 46 P.3d 770. Neither party argues in their briefs that the statute is ambiguous, and our reading of it does not reveal ambiguity. Thus, we interpret section 77–18–1(5) according to its plain language. *See id.*

¶ 14 Section 77–18–1(5)(a) states:

Prior to the imposition of any sentence, the court *may,* with the concurrence of the defendant, continue the date for the imposition of sentence for a reasonable period of time for the purpose of obtaining a presentence investigation report from the department or information from other sources about the defendant.

Utah Code Ann. § 77–18–1(5)(a) (emphasis added). Use of the permissive term "may" plainly indicates that the trial court is not required to continue sentencing to obtain a presentence investigation report. Thus, the trial court did not err when it concluded it had discretion to sentence Madsen without ordering a presentence investigation report.

¶ 15 Madsen argues that use of the word "shall" in section 77–18–1(6)(a) mandates the use of a presentence investigation report. That section provides:

The department *shall* provide the presentence investigation report to the defendant's attorney, or the defendant if not represented by counsel, the prosecutor, and the court for review, three working days prior to sentencing. Any alleged inaccuracies in the presentence investigation report, which have not been resolved by the parties and the department prior to sentencing, shall be brought to the attention of the sentencing judge, and the judge may grant an additional ten working days to resolve the alleged inaccuracies of the report with the department.

*Id.* § 77–18–1(6)(a) (emphasis added). However, nothing in the plain language of this subsection limits the discretion of the trial court. The word "shall" directs the department of corrections, not the trial court. Further, section 77–18–1(6)(a) may not be interpreted in a vacuum, but within the context of the trial court's discretion, which the plain language of section 77–18–1(5)(a) gives it. *See Utah County v. Orem City,* 699 P.2d 707, 709 (Utah 1985) ("Subsections of a statute should not be construed in a vacuum but must be read as part of the statute as a whole."). Accordingly, we affirm the trial court's interpretation of the statute and its conclusion that it had discretion to sentence Madsen without the aid of a presentence investigation report.

### CONCLUSION

¶ 16 Neither the use of leg restraints nor the courtroom security in this case was inherently prejudicial. Further, the record does not support the assertion that Officer Butler's testimony " 'so likely influence[d] the jury that [Madsen] cannot be said to have had a fair trial.' " *Decorso,* 1999 UT 57 at ¶ 38, 993 P.2d 837 (citation omitted). Moreover, the trial court correctly interpreted the statute to mean that it had discretion to sentence Madsen without the aid of a presen-

---

4.  We note that Madsen does not challenge his sentence, only the trial court's conclusion that it had discretion to sentence him without a presentence investigation report. Likewise, he does not

argue, alternatively, that if the court actually had such discretion, the discretion was abused in this case.

tence investigation report.  Accordingly, we affirm.

¶ 17 WE CONCUR: RUSSELL W. BENCH and GREGORY K. ORME, Judges.