2003 UT App 359

**STATE of Utah, Plaintiff and Appellee,**

v.

**Cris Rudger ATKIN, Defendant and Appellant.**

**No. 20020325–CA.**

Court of Appeals of Utah.

Oct. 23, 2003.

Margaret P. Lindsay, Aldrich Nelson Weight & Esplin, and Patrick V. Lindsay, Provo, for Appellant.

Mark L. Shurtleff, Attorney Generals Office, and Christine Soltis, Assistant Attorney General, Salt Lake City, for Appellee.

Before JACKSON, P.J., BILLINGS, Associate Presiding Judge, and THORNE, J.

## OPINION·

JACKSON, Presiding Judge:

¶1 Cris Rudger Atkin (Atkin) appeals his convictions of one count of Aggravated Sexual Abuse of a Child and one count of Sexual Exploitation of a Minor. We affirm.

## BACKGROUND

¶2 In 1997, Atkin and his wife, Stephanie Curtis (Curtis), divorced. Pursuant to the divorce decree, Curtis was granted custody of the couple's three children, while Atkin was granted visitation rights that called for the children to spend every other weekend with him.

¶3 After the divorce, Atkin moved into an older home in Provo that had been divided into two apartments. Atkin lived in the basement apartment, with other tenants occupying the apartment on the main level of the home.

¶4 Atkin's apartment was accessible from a side door to the house that was located off of the driveway. Upon entering the main door to his apartment, there were two sets of stairs. The first led up approximately four to five stairs to a small landing. Due to the construction of the home, the landing was actually located on the main level. The landing was separated from the upstairs apartment, however, by a locked door. Atkin used the landing as his own personal office. He had a desk there and a computer. This computer had "buddy cables" running from it that connected it to a second computer that was located in the basement portion of Atkin's apartment.

¶5 The basement portion of Atkin's apartment was accessible via a second stairway that led directly down from the outside door. There was no partition or inner doorway cutting off access to the basement portion of Atkin's apartment from the stairway itself, thus allowing the buddy cables connecting Atkin's two computers to run up the two stairways without obstruction.

¶6 Atkin's bedroom was located in the basement portion of his apartment. When the three children would come to visit, they slept in a converted storage room that was separated from his bedroom by a wooden door. Given that there were only two mattresses in the room, D.A., Atkin's youngest daughter, slept on an air mattress on the floor of the room. The air mattress would often deflate in the middle of the night, however, so it was somewhat common for D.A. to

instead sleep on the living room couch or in Atkin's bed.

¶ 7 On October 2, 2000, Curtis found a note on the pillow of her bed. The note was in D.A.'s handwriting and stated that "[m]y dad is sexually harassing me." The note was signed by D.A. D.A. was nine-years old at the time. A few days later, D.A. handed her mother a second note. This note contained several very specific allegations of sexual abuse by Atkin. Additionally, the note alleged that Atkin was showing D.A. pictures of people engaged in sexual activity. At this point, Curtis contacted the police.

¶ 8 On October 13, 2000, the police obtained a search warrant authorizing them to search Atkin's "residence." After first listing the street address to the home, the search warrant identified Atkin's specific apartment as the object of the search by stating that "[t]he apartment of interest is in the basement." The warrant further described the side door that led into Atkin's apartment and noted the apartment number which was located above his door.

¶ 9 Under the terms of the warrant, the officers were authorized to seize, among other things, "video tapes, photographic or other images, computers and computer systems, computer hardware including peripherals and cables, computer software stored on any media such as floppy disks or CD ROMs, [and] removable media such as external hard drives or data cartridges." Pursuant to this warrant, officers seized the two computers from Atkin's apartment that had been linked together by the buddy cable system.

¶ 10 A subsequent search by computer experts retained by the Provo City police department revealed nothing incriminating from the computer that had been located in the basement portion of the apartment. When searching the computer that had been located on the landing, however, officers found two video clips showing explicit sexual activity. These clips appeared to involve minors. Officers also found various names of files that had been on the computer. Though the actual content of these files had been deleted through use of a cleansing program, the names of the files had remained on the computer's hard drive. Many of these file names were sexually suggestive in nature.

¶ 11 On October 31, 2000, Atkin was charged with one count of Aggravated Sexual Abuse of a Child[1] and one count of Sexual Exploitation of a Minor.[2] Prior to trial, Atkin moved to suppress the evidence that had been obtained from the landing. Atkin argued that, insofar as the warrant only authorized search of the "basement" apartment, the officers' search of the upstairs landing had violated the scope of the warrant. This motion was denied.

¶ 12 At trial, D.A. testified that Atkin had sexually abused her and that Atkin had shown her pornographic images and pornographic videos on the upstairs computer. To support the charge involving child pornography, the prosecution attempted to introduce a listing of the file names that had been found on the upstairs computer. Responding to a motion by Atkin, however, the trial court ruled that reference to the file names was inadmissible on two grounds. The court first

1. Utah Code Ann. § 76–5–404.1(1) (1999) states, in relevant part, that a person is guilty of Sexual Abuse of a Child if:

the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child younger than 14 years of age, or otherwise takes indecent liberties with a child ... with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

Under § 76–5–404.1(3), the offense is considered to be Aggravated Sexual Abuse of a Child if: (d) the accused used, showed, or displayed pornography ... during the course of the offense; ...

. . . .

(h) the offense was committed by a person who occupied a position of special trust in relation to the victim; "position of special trust" means that position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim, and includes ... [a] natural parent. . . .

2. Utah Code Ann. § 76–5a–3(1)(a) (1999) states that a person is guilty of Sexual Exploitation of a Minor if:

he knowingly produces, distributes, possesses, or possesses with intent to distribute, material or a live performance depicting a nude or partially nude minor for the purpose of sexual arousal of any person. . . .

ruled that, without evidence of the files' content, there would be a lack of foundation from which the jury could determine whether the files actually contained child pornography, or whether they instead merely contained legally permissible adult pornography. Second, the court ruled that the admission of these explicit file names would prove more prejudicial than probative.

¶ 13 The court did allow the prosecution to present the two video clips that had been retrieved from the upstairs computer to the jury. In support of its contention that the video clips contained child pornography, the prosecution presented expert testimony indicating that, within "a reasonable degree of medical certainty," it could be established that the females engaged in sexual activity on the video clips were under the age of eighteen.

¶ 14 When Atkin took the stand for his direct examination, he denied having possessed child pornography on his computer. He specifically stated that he had not downloaded the two video clips that were found on his computer and that D.A.'s testimony that he had shown her pornography on the computer was false. On cross-examination, the prosecutor repeatedly questioned Atkin about these denials.

¶ 15 At one point during this cross-examination, Atkin stated that "[m]y computer had no porn, to my knowledge, on it." In response, the prosecutor asked: "Oh? Isn't it true that you actually have an account with 'XXLteens.com'?" Atkin denied having an account with the website, and the prosecutor pressed the point. After a few questions on the subject, Atkin's counsel objected. Atkin's counsel argued that, absent some foundation as to the actual content of the site, reference to the site should be prohibited. Specifically, Atkin's counsel again contended that, without some specific evidence showing that the site contained child pornography, the jurors might impermissibly draw inferences from alleged visitations to a site that could merely have contained legal images of adult pornography. In this manner, Atkin's counsel argued that the questioning not only violated the rules of evidence, but also the judge's prior order excluding the list of file names found on Atkin's computer. Atkin's counsel accordingly moved for a mistrial.

¶ 16 The court denied Atkin's request for a mistrial. The court ruled that the earlier ruling had only covered the listing of file names found on the computer, and that it accordingly did not apply to the questioning regarding the "XXLteens.com" website. Further, while acknowledging that the prosecution had not laid any foundation that would establish whether the "XXLteens.com" website contained child pornography, or whether it instead merely contained adult pornography, the court nevertheless ruled that Atkin had opened the door for the questioning by denying that his computer possessed any pornography of any kind. Thus, the court ruled that the questioning was proper as impeachment of his prior denials. However, given the concerns regarding the lack of foundation concerning the site's actual content, the prosecution agreed not to proceed further with the questioning regarding the "XXLteens.com" website.

¶ 17 On January 4, 2002, the jury convicted Atkin on both counts. Atkin now appeals. Atkin first argues that the search of the upstairs landing exceeded the scope of the search warrant and that the evidence obtained therefrom should have been excluded. Second, Atkin argues that the questioning regarding the "XXLteens.com" website was an impermissible use of character evidence and that the trial court's refusal to disallow the questioning warranted a mistrial.

## ISSUES AND STANDARDS OF REVIEW

¶ 18 "We review for correctness the trial court's legal conclusions on motions to suppress. We will overturn the trial court's underlying factual findings only if those findings are clearly erroneous." *State v. South,* 932 P.2d 622, 624 (Utah Ct.App.1997).

¶ 19 "A trial court's denial of a motion for a mistrial will not be reversed absent an abuse of discretion." *State v. Wach,* 2001 UT 35,¶ 45, 24 P.3d 948.

## ANALYSIS

### I. Atkin's Motion to Suppress

¶ 20 Atkin first claims that the evidence obtained from the upstairs landing should have been excluded. We disagree.

¶ 21 The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or things to be seized.". (Emphasis added.) The Utah State Constitution contains a similar protection. *See* Utah State Const. art. I, § 14.

 ¶ 22 The protections afforded by the "particularity requirement" are twofold. First, the requirement mandates that magistrates describe with specificity the items and places that can be searched under the auspices of a search warrant. Interpreting this requirement, the Utah Supreme Court has held that a warrant is sufficiently particular "if the description is such that the officer with a search warrant can *with reasonable effort* ascertain and identify the place intended." *State v. Anderson*, 701 P.2d 1099, 1102 (Utah 1985) (emphasis in original) (quoting *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925)); *see also State v. McIntire*, 768 P.2d 970, 972 (Utah Ct.App.1989). Second, the particularity requirement mandates that officers acting pursuant to a warrant confine their search to those areas and objects that have been specifically identified in the warrant. "A valid warrant authorizes the police to search when and where they otherwise would have no right, and consequently, the terms of the warrant dictate the scope of the officers' authority." *State v. Dunn*, 850 P.2d 1201, 1217 (Utah 1993). Thus, "the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004 n. 7, 29 L.Ed.2d 619 (1971).

¶ 23 Atkin does not argue that the warrant was insufficiently particular; instead, Atkin argues that the warrant's authorization for a search of "the apartment ... [that] is in the basement" did not authorize a search of the landing, and that the evidence seized therefrom should have been suppressed. We disagree.

 ¶ 24 In *State v. Gallegos*, the Utah Supreme Court held that "the line between what is and what is not sufficiently particular

must be drawn with a view to accomplishment of the constitutional purpose and necessarily varies with the circumstances and with the nature of the property to be seized." 712 P.2d 207, 209 (Utah 1985). The constitutional purposes behind the particularity requirement are well established. "A central purpose" of the warrant clause "is to protect against *general, exploratory rummaging* in a person's belongings.'" *Dunn*, 850 P.2d at 1217 (emphasis added) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)). The particularity requirement is one of the chief mechanisms by which this purpose is achieved. Thus, the

> particularity requirement is intended to prohibit general warrants which give inferior officials roving commissions to search where they please and seize what they please—such as the infamous writs of assistance under which British customs officials, in the years preceding the American Revolution, received the authority to search where they pleased for goods imported in violation of British tax laws, an outrage that was fresh in the Founding Fathers' minds when they adopted the Bill of Rights.

John E. Theuman, *Sufficiency, Under Federal Constitution's Fourth Amendment, of Description in Search Warrant of Place to be Searched or of Person or Thing to be Seized—Supreme Court Cases*, 94 L.Ed.2d 813, 814 (1999); *see also* Larry EchoHawk and Paul EchoHawk, *Curing a Search Warrant that Fails to Particularly Describe the Place to be Searched*, 35 Idaho L.Rev. 1, 4 (1998) (stating that "the particularity requirement ensures that a search will be limited to its justifications and will not become the unbridled exploratory search the Framers sought to prohibit").

¶ 25 Considering the particular facts of this case, we do not think that the officers' decisions to search the landing and then to seize the computer that was located on the landing constituted the sort of general, exploratory search against which the particularity requirement was designed to protect. Under the terms of the warrant, the officers had the undisputed authority to search for computer

equipment that might contain evidence of child pornography that could be found in Atkin's basement apartment. Though it is clear that the landing was located on the ground level, it is also clear that the house was divided in such a manner so as to render that landing part of the basement apartment.

¶ 26 The landing in question was accessible through two different doorways. The first was the doorway located directly off of the landing; testimony at the suppression hearing and at trial indicated that that door was locked, and the trial court accordingly found that the landing was not "accessible from the upstairs apartment at the time the search warrant was executed." The only other doorway leading to the landing was the doorway off of the side of the house that served as the entryway to Atkin's apartment. From this doorway, one had unobstructed access to both the stairway leading up to the landing and to the stairway leading down to the basement portion of Atkin's apartment. There were no dividers or doorways separating these two stairways, and there was nothing at the bottom of the basement stairway closing off Atkin's apartment from the stairs above.

¶ 27 Given the nature of the division between the two apartments, and given the presence of the buddy cables running up to the landing from Atkin's basement living room, the trial court concluded that the landing and the stairway leading up to the landing constituted "an integral part of the basement apartment" and that the search warrant authorized the officers to search and seize the items contained therein. We cannot say that this finding was clearly erroneous and we therefore uphold that factual finding.

¶ 28 In accordance with our decision regarding the trial court's factual finding, we further hold that the trial court was correct in determining that this search was not the sort of general, exploratory search that the particularity requirement was designed to prohibit. Here, there was no discretionary, unrestrained rummaging through unauthorized belongings or dwellings. Instead, the officers appropriately confined their search to those places and items that could reason-

ably have been identified as a part of Atkin's basement apartment. The trial court was therefore correct in ruling that the search of the landing was authorized under the terms of the search warrant.

¶ 29 Accordingly, we hold that the trial court did not err when it denied Atkin's motion to suppress items seized on the upstairs landing.

## II. Atkin's Motion for a Mistrial

¶ 30 Atkin next argues that the trial court erred when it denied his motion for a mistrial after the prosecution had questioned him regarding the "XXLteens.com" website. Atkin argues that this questioning was an impermissible use of character evidence that unfairly tainted the jury, thereby warranting a mistrial. While we agree with Atkin that the questioning was improper, we disagree with him that its effect was such so as to require a mistrial.

¶ 31 Rule 404 of the Utah Rules of Evidence states that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." In *State v. Saunders*, the Utah Supreme Court stated that it is "fundamental in our law that a person may be convicted criminally only for his acts, not for his general character. That principle is violated if a conviction is based on an inference that conviction is justified because of the defendant's criminal character or propensity to commit bad acts." 1999 UT 59,¶ 15, 992 P.2d 951. The rules against improper use of character evidence thus work "to ensure that a defendant is only convicted because he committed the charged offense and not because the jury is convinced of his cumulative bad behavior." *State v. Houskeeper*, 2002 UT 118,¶ 24, 62 P.3d 444.

¶ 32 We agree with Atkin that the questioning was improper. In its earlier rulings, the trial court correctly noted the very real danger that exists in child pornography prosecutions, whereby evidence that the defendant has consumed adult pornography might impermissibly resonate with a jury that is tasked only with determining whether the

defendant had possessed child pornography. Absent some specific evidence of the use or possession of child pornography, general questioning regarding adult pornography is clearly unwarranted in such a prosecution. Here, where there was no foundation of any kind regarding the contents of the "XXLteens.com" website, and where reference to the name of the website alone could reasonably have suggested to the minds of the jurors that the site contained images of child pornography, we hold that the trial court's decision to allow the questioning of Atkin regarding the site was therefore improper.

¶ 33 The trial court justified its decision to allow the prosecution to question Atkin regarding "XXLteens.com" by concluding that Atkin had opened the door for the questioning. We disagree with this conclusion. In our view, this case is closely analogous to the situation presented to the Utah Supreme Court in *State v. Saunders. See generally* 1999 UT 59, 992 P.2d 951. In *Saunders,* the defendant was charged with sexually abusing his young daughter. *See id.* at ¶ 4. Though there was some evidence indicating that the abuse may have extended over a period of two years, the actual charges that were filed against the defendant only included allegations relating to incidents within a particular time frame. *See id.* During the prosecution's case in chief, however, the prosecutor elicited testimony from the victim regarding instances of abuse that had occurred outside the time frame covered in the information. *See id.* at ¶ 6. On direct examination of the defendant, the defendant openly discussed those pre-information allegations, therein explaining that the alleged abuse was nothing more than him applying salve to treat his daughter's rash. *See id.* The prosecutor challenged the veracity of Saunders' explanation on cross-examination, and then again referred to the pre-information instances in the closing statement. *See id.* at ¶¶ 5–6. On appeal, the defendant argued that the references to the pre-information allegations of abuse were unlawful uses of character evidence. *See id.* at ¶ 8. The prosecution responded, however, by arguing that the defendant had "opened the door" to this evidence by testifying openly about the alleged instances in his own direct examination. *See id.* at ¶ 9.

¶ 34 The Utah Supreme Court unequivocally agreed with Saunders, holding that "it was not defendant who 'opened the door' to that evidence but that the State did so by adducing such evidence through several witnesses, beginning long before Saunders took the stand." *Id.* at ¶ 21. The Court thus held that the State "effectively forced defendant to respond in his direct examination regarding his conduct in that period." *Id.* at ¶ 24. Accordingly, "Saunders clearly was entitled to rebut the charges that he had abused B.C. before the period charged without waiving his right to attack" the admissibility of evidence regarding the pre-indictment incidents. *Id.*

¶ 35 Here, the prosecution's case in chief against Atkin produced witnesses and evidence indicating that Atkin had pornography on his computer. Under *Saunders,* Atkin was clearly entitled to rebut those charges in his testimony without opening the door for any evidentiary improprieties. The prosecution's efforts to use his affirmative rebuttal as a means of opening the door for further evidence was improper, and the trial court should have ruled that the questioning was impermissible.

¶ 36 However, our conclusion that the questioning was improper does not end the inquiry. A trial court's ruling on a motion for a mistrial is only overturned on a showing of an abuse of discretion. *See State v. Wach,* 2001 UT 35, ¶ 45, 24 P.3d 948. " ' "Unless a review of the record shows that the court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion." ' " *State v. Madsen,* 2002 UT App 345, ¶ 12, 57 P.3d 1134 (quoting *State v. Decorso,* 1999 UT 57, ¶ 38, 993 P.2d 837 (quoting *State v. Robertson,* 932 P.2d 1219, 1231 (Utah 1997))).

¶ 37 Here, the prosecution's reference to the "XXLteens.com" website was not the only evidence presented regarding Atkin's possession of child pornography. Instead, the prosecution presented two video clips

that had been found on the upstairs computer showing images of explicit sexual behavior, and the prosecution further presented expert testimony indicating that the females in the video clips were minors. Atkin does not challenge the trial court's decision to admit this evidence. Given the impact that the presentation of these video clips undeniably had on the jury, we cannot say that the effect of the isolated questioning regarding Atkin's alleged visits to "XXLteens.com" was a substantial or even marginal factor in the jury's decision to convict him on charges of possessing child pornography. This is particularly so here, where the prosecution agreed to abstain from presenting further evidence regarding that website to the jury in its questioning or in its closing statement. Accordingly, we hold that Atkin's right to a fair trial was not prejudiced by the questioning, and that the trial court did not err in denying Atkin's motion for a mistrial.

## CONCLUSION

¶ 38 We therefore hold that the officers did not exceed the scope of the search warrant when they searched and seized items from the landing portion of Atkin's apartment. We further hold that though the references by the prosecutor to "XXLteens.com" were improper, the cumulative effect of those isolated references does not warrant a mistrial.

¶ 39 Accordingly, we affirm.

¶ 40 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and WILLIAM A. THORNE JR., Judge.