**2016 UT App 202**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LAUREN AILEE MAISON RIVERA,
Appellant.

Opinion
No. 20140083-CA
Filed September 22, 2016

First District Court, Logan Department
The Honorable Kevin K. Allen
No. 121101240

David M. Perry, Attorney for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and KATE A. TOOMEY concurred.

ORME, Judge:

¶1     Lauren Ailee Maison Rivera committed financial fraud
against her then-best friend (Victim), opening several credit
cards in Victim's name using Victim's personal and financial
information. Various other charges were pending against Rivera,
and she entered into a "global" resolution of all charges by
pleading "guilty with a mental illness" to one count of forgery
and three counts of identity fraud, all third degree felonies. *See*
Utah Code Ann. §§ 76-6-1102(3)(a), -501(5)(a) (LexisNexis Supp.

2016).[1] The trial court sentenced her to four prison terms of up to five years. She appeals; we affirm.

BACKGROUND

¶2     While on probation from a conviction on similar charges in Colorado, Rivera befriended Victim, who was a coworker, and the two spent increasing amounts of time together. Rivera eventually obtained Victim's financial and personal information, including her Social Security number, and used it to obtain several credit cards by mail. Rivera, who was brazen in her use of these cards, later bragged that she purchased Victim gifts and took Victim out to lunch while using the cards she had fraudulently obtained in Victim's name.

¶3     This continued for some time until Victim received notice from a debt collector that she had failed to pay her credit card bill when due and that it was being sent to collections. Confused, Victim asked for and received more information, eventually deducing that Rivera had obtained a credit card in Victim's name. Victim subsequently learned that Rivera had obtained at least five credit cards in Victim's name. Victim contacted the police, who opened an investigation that ultimately resulted in Rivera being charged with several counts of identity fraud and forgery in this and two other cases.

¶4     Rivera's competency to stand trial was reviewed by two alienists,[2] and while she had bipolar disorder, she was found

1. Although various statutes at issue in this case have been amended, the changes are inconsequential in the context of this case. Therefore, for ease of reference, we cite the most recent codification of these statutes.

2. According to Black's Law Dictionary, "alienist" is an archaic word for "psychiatrist." *Alienist*, Black's Law Dictionary 85 (9th
(continued…)

competent to stand trial. The alienists noted that her condition was stable with medication and recommended that she continue a regimen of medication and therapy.

¶5     One year later, Rivera agreed to a plea deal in which all but the three counts of identity fraud and one count of forgery were dropped in exchange for her plea of "guilty with a mental illness" to those charges. At that time, the trial court requested that a presentence investigation report (PSI) be prepared before sentencing, which was scheduled for two months later.

¶6     On the day of sentencing, defense counsel requested a ten-day continuance, alleging that he had received the PSI only two working days before the hearing rather than three as required by statute.[3] *See* Utah Code Ann. § 77-18-1(6)(a) (LexisNexis Supp. 2016) ("The department shall provide the presentence investigation report to the defendant's attorney, or the defendant if not represented by counsel, the prosecutor, and the court for review, three working days prior to sentencing."). *See also id.* (allowing a trial court to grant a continuance of ten days "to resolve the alleged inaccuracies" in the PSI). According to Rivera, "[t]he trial court was apparently unaware of the three day prior to sentencing requirement and stated there are no set rules on how quickly you have the presentence report, it's just within what is reasonable." Defense counsel sought the continuance in order to prepare "a written response to what [Rivera] believes were factual errors . . . [in] the report." The trial

_____

(…continued)

ed. 2009). At least one of our statutes continues to use the archaic expression. *See* Utah Code Ann. § 77-27-7 (LexisNexis 2012).

3. Almost four months after the hearing, defense counsel averred in a court filing that "[t]he PSI was served three business days before sentencing." Given our disposition of this appeal, there is no need for us to reconcile this discrepancy.

court denied the requested continuance but granted Rivera an extra ninety minutes to assemble any appropriate corrections or clarifications to the PSI.

¶7    Defense counsel then presented a number of items that Rivera believed to be discrepancies in the PSI. These discrepancies fell into two broad categories. First, Rivera challenged a number of small, relatively insignificant factual details, such as whether her various married names qualified as aliases (as well as the spelling of those names), the number of counts of each type of offense to which she pled guilty (she believed there were two counts of identity fraud and two counts of forgery instead of three and one, respectively), whether any other victims existed, and the PSI's characterization of her work history as "sporadic." She further denied having had access to customers' personal financial information in her previous jobs and having had access to the personal information of callers while working as a volunteer for a nonprofit entity.

¶8    The corrections in the second category were less corrections, per se, than quibbles with the PSI investigator's characterization of Rivera's behavior and attitude. He believed that she did not express remorse for her crimes; she insisted that she did. He noted that she "[j]ustifie[d] her ongoing criminal behavior because she was off her medications"; she insisted that she did not. All of these "corrections" were included in a hand-corrected PSI submitted to the court.[4] In that submission, Rivera also noted that Victim requested "RETRIBUTION, not restitution," and attempted to clarify the various dates underlying her previous criminal history.

---

4. Significantly, Rivera does not identify on appeal any additional corrections or clarifications to the PSI that are in order but went unnoted at her sentencing hearing.

¶9      The trial court listened to Rivera's presentation and later questioned the prosecutor about several of the points Rivera raised. The trial court then allowed Victim, Victim's father, and Victim's lawyer to address the court. Victim recounted the devastating impact of Rivera's betrayal of trust and disclosed that "[Rivera has] made me scared of how I'm going to live the rest of my life because this is still going to be on my credit." Victim also stated that she had to move in with her parents as a result of the financial impact of Rivera's crimes. Victim's lawyer, in her statement, explicitly asked the court to impose consecutive prison sentences on Rivera.

¶10     Finally, the trial court sentenced Rivera. The judge noted that this was "a very difficult case for the Court." Although the judge stated, "The Court has I think a pretty good understanding of mental illness and its effects on people," he concluded that "the Court . . . cannot ignore the great difficulty that this case has imposed upon the victim and her family." As a result, the court sentenced Rivera "to zero to five years at the Utah State Prison" on each of the four counts but rejected the call for consecutive sentences. After defense counsel asked, "[H]ow can [Rivera] continue to get therapy and medication?," the trial court replied, "They have a very good mental health ward at the prison. . . . I've witnessed it firsthand, and the Court is very comfortable that Ms. Rivera will continue to get the help that she needs."

¶11     Four months later, Rivera filed a copy of her PSI with her handwritten annotations and corrections. The trial court submitted the corrected PSI to the Board of Pardons and Parole before her first Board hearing. Rivera also filed a motion to correct her sentence based on Utah Code section 77-16a-104, which the court denied. It is from her sentence and the denial of this motion that Rivera appeals.

ANALYSIS

## I. The Trial Court Did Not Abuse Its Discretion When It Refused To Grant Rivera a Ten-Day Continuance To Address the Claimed Inaccuracies in the PSI.

¶12   Rivera assails the trial court's refusal to grant her a ten-day continuance so she could better challenge the alleged inaccuracies in her PSI. This court reviews decisions involving continuances of sentencing only for abuse of discretion. *See State v. Lindsey*, 2014 UT App 288, ¶ 10, 340 P.3d 176.

¶13   Rivera notes there is a statutory requirement that a defendant "shall" be given the PSI at least "three working days prior to sentencing." *See* Utah Code Ann. § 77-18-1(6)(a) (LexisNexis Supp. 2016). She claims that the trial court therefore abused its discretion when it refused to grant a ten-day continuance as authorized under the same section. *See id.* Although the three-day requirement exists, we nevertheless affirm the trial court's refusal to grant the requested continuance because "[t]he word 'shall' directs the department of corrections, not the trial court." *State v. Madsen*, 2002 UT App 345, ¶ 15, 57 P.3d 1134. *See also* Utah Code Ann. § 77-18-1(6)(a) ("*The department* shall provide the presentence investigation report to the defendant's attorney . . . three working days prior to sentencing.") (emphasis added). As we noted in *Madsen*, "nothing in the plain language of this subsection limits the discretion of the trial court." 2002 UT App 345, ¶ 15. Thus, the trial court was not required to give Rivera three days to review the PSI in advance of sentencing, and its decision not to give her a continuance of ten days to address the perceived inaccuracies was an exercise of discretion that, as noted, we review only for abuse.

¶14   But we need not definitively decide if the court abused its discretion in not giving Rivera more time because, in any event, she has failed to demonstrate that she was prejudiced by the trial

court's decision. As noted above, the trial court listened to the full recitation of the PSI's alleged inaccuracies as identified by Rivera and asked some questions about them. It also listened to Rivera's mental health professionals. It took further testimony from Victim, as well as from Victim's father and from her lawyer. It then imposed sentence and, while doing so, made extensive note of Rivera's mental health issues but balanced that consideration with the devastating impact Rivera's crimes had upon Victim. *See* Utah Code Ann. § 77-38-4(1)(b) (LexisNexis 2012).

¶15 All these facts were before the court, and because Rivera does not suggest—much less demonstrate—that there were any additional errors she missed in preparing for her presentation at the sentencing hearing, it is impossible for us to conclude that she was prejudiced in any way. *Cf. State v. Abelon*, 2016 UT App 22, ¶¶ 20–21, 369 P.3d 113 (explaining that even where "the district court fail[s] to make findings on the record as section 77-18-6(a) requires," its "failure to resolve [the defendant's] objections" does not require reversal if the defendant's "sentence was [not] materially affected by the matters that [the defendant] challenged in [her] objections") (citations and internal quotation marks omitted). And, because the trial court already forwarded Rivera's handwritten PSI corrections to the Board of Pardons, we see no basis for even a limited remand "to make appropriate corrections to the report." *See State v. Monroe*, 2015 UT App 48, ¶ 10, 345 P.3d 755.

## II. Rivera's Argument That Her Prison Sentence Was Excessive Is Inadequately Briefed.

¶16 Rivera argues that the trial court abused its discretion by sentencing Rivera to prison. This claim is inadequately briefed. It is not enough to tell this court that the trial court "failed to consider all the legally relevant factors and . . . imposed an excessive sentence." This "bald statement . . . shift[ed] the burden of research and argument to this court," *LD III LLC v.*

*Davis*, 2016 UT App 139, ¶ 26, and thus constitutes inadequate briefing of the issue.

¶17    Rivera's additional claim that "the trial court failed to consider . . . all the corrections the appellant made to [the] presentence report" is also inadequately briefed, but for a different reason: she entirely fails to reference the record in making this argument—except for a single reference to the PSI's indication that Rivera "suffers from a bi-polar affective disorder." We decline "to peruse the record [to] see if we can discern some problem with the district court's analysis." *Id.*

III. Rivera Invited Any Error That Resulted from Her Insistence
That the Court Afford Her a Hearing Under Section 77-16a-104.

¶18    Rivera claims that the trial court failed to conduct a hearing to determine whether she currently suffered from a mental illness. This argument fails due to invited error. "It is . . . elementary that a party may never avail himself of an invited error" for otherwise courts would "become the mere playthings of the parties to the actions and be controlled by their whims and caprices." *Van Cott v. Wall*, 178 P. 42, 47 (Utah 1918). Rivera invited error because she argued below that Utah Code section 77-16a-104 applied. *See* Utah Code Ann. § 77-16a-104(1) (LexisNexis 2012) (describing the procedure to follow upon entry of "a verdict of guilty with a mental illness"). And that was the provision the trial court considered and on which it ruled. Now Rivera raises, for the first time on appeal, the argument that she should instead have been afforded a mental health hearing under Utah Code section 77-16a-103. *See id.* § 77-16a-103(1)–(4) (describing the procedure for acceptance of a guilty plea with mental illness). Having invited the trial court's attention to one provision, she will not now be heard to complain that the trial court should instead have considered a different provision that was not called to its attention.

CONCLUSION

¶19    Any error in the trial court's refusal to grant Rivera a ten-day continuance of her sentencing is harmless in the absence of any demonstrated prejudice resulting from the trial court's decision. Rivera's claim that her sentence was excessive is inadequately briefed, and her argument that she was entitled to a formal mental health hearing is foreclosed under the doctrine of invited error.

¶20    Affirmed.

_____