[No. 25493-0-II.   Division Two.   July 13, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS OLIVER LAKE, JR., *Appellant*.

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

MORGAN, J. — Douglas Oliver Lake, Jr., claims that the State breached a plea agreement, and that he should be allowed either to withdraw his plea or to be resentenced. We remand for further proceedings consistent herewith.

Lake and the State formed a plea agreement. Lake agreed to plead guilty to two counts of first degree child rape. The State agreed to recommend a SSOSA sentence[1] on condition that Lake be found by a sex-treatment provider to have "a fair or better prognosis in treatment," and on condition that Lake pass a "polygraph relating to sexual history and the evaluation."[2]

At a hearing on September 3, 1999, the trial court ascertained that Lake understood (1) the charge; (2) the rights he was waiving; and (3) that the court was not bound to follow the State's recommendation. The court then accepted Lake's guilty plea.

On October 21, Daniel DeWaelsche performed a psychosexual evaluation. In his ensuing report, he stated that Lake was a "viable candidate for sex offender treatment,"[3] and that Lake had passed a polygraph test.

On November 30, Lake sent a "kite" from the jail to the trial court. He stated:

> I have been trying to get some kind of defense for my crimes going [sic] my DAC lawyer has not listened to me[.] I do not want this Plea I signed Sept 3, 1999[.] I have told my lawyer from the beginning I was not right in the head, and that I was driven this way during 6+ years of domestic violence from the mother of my children[.] [N]o one helped me then, please help me[.] The [sheriffs] came many times to my house and did not

---

[1] Special Sex Offender Sentencing Alternative, RCW 9.94A.120(8).

[2] Clerk's Papers (CP) at 18.

[3] CP at 76.

help me[.] I know what happened was wrong but I tried turning her in but they would not arrest her. I need real defense help will not accept this plea even if it costs me my freedom. She bets [sic] our kids with her fists she bets [sic] me and still even in here she hurts me. For my children's lifes [sic] help me. No one will file charges for me, I have wittnesses [sic] to here [sic] crimes but no one has helped me.[4]

The trial court received the "kite" but did not read it at that time. The court forwarded copies to the prosecutor and defense counsel, and the prosecutor later filed a copy with the clerk of the court.

At a sentencing hearing on December 10, the prosecutor noted that she had received and filed Lake's "kite." Lake's counsel interjected that Lake was "not asking that his plea be withdrawn at this time," and that Lake "would like to go forward."[5] When the court asked whether it should read the "kite," the prosecutor answered yes and explained:

> It is the State's position that the Court should review it, because not only does he indicate that he wants to withdraw his guilty plea, but he goes on to explain what drove him to committing these crimes. He tries to lay the blame with his wife who he supposedly saw beating his children, [sic] how he called the police numerous times. And I think it goes to whether or not he, in fact, is a good SSOSA candidate.
>
> But anyway, Your Honor, the State is ready to proceed at this time.

[Defense]: Your Honor, from my understanding the State was, in accordance with their agreement, recommending that he was appropriate for SSOSA if an evaluator said he was. So is the State now arguing against their plea agreement?

[Prosecutor]: I'm just laying this for the Court.[6]

After some intervening discussion not pertinent here, the

---

[4] *Id.* at 79-80.

[5] Report of Proceedings (RP) (Dec. 10, 1999) at 2-3.

[6] *Id.* at 3-4.

prosecutor stated her sentencing recommendation as follows:

> [I]t was the State's intention, of course, to recommend SSOSA if he was found eligible. He was found eligible by the evaluator. The only thing that concerns me, of course, is this letter. . . . I think it goes to the defendant's state of mind about whether he believes he is, in fact, culpable of these offenses. He is trying to lay the blame for what he did to these two girls with the mother of these two girls. Basically it appears to me that he feels driven by the mother of these two girls into doing these heinous acts.
>
> It really surprised me that he would write this letter blaming the mother of these children after he fully confessed [and] after he told a psychosexual evaluator in detail about the acts that he committed. And so, of course, I wanted to alert the Court to that. Thank you.[7]

Lake did not try to stop the sentencing proceeding. Nor did he ask to vacate his plea. When asked if he wanted to say anything, he said, "I'm here because I did it,"[8] and he asked for treatment instead of prison.

Declining to use SSOSA, the trial court imposed exceptional concurrent sentences of 220 months on each count.[9] The trial court based its sentences on abuse of a position of trust; multiple victims; multiple offenses against each victim; and particular vulnerability.

On January 7, 2000, Lake filed a notice of appeal to this court. Five days later, on January 12, the prosecutor wrote to Lake's counsel, stating:

> Although it was not my intent, upon reflection, I believe that I may have breached our agreement that your client could do SSOSA if found eligible. I was upset that your client wanted to withdraw his guilty plea and that he placed the blame with the victims' mother for what he had been doing during the past four years. I believe that he said what [he] needed to in order to

---

[7] *Id.* at 6.

[8] *Id.* at 14.

[9] The standard range was 120-160 months on each count.

be found eligible for SSOSA although he truly believes that he was driven to do the things he did by the girls' mother. Upon reflection, I should have had Dr. DeWaelsche reassess defendant's eligibility rather than say what I did in open court.

So that your client may be remedied immediately rather than year(s) from now, I will stipulate to any of the following: (1) Withdrawal of his guilty plea; (2) Vacate judgment and sentence and be resentenced in front of another judge; or (3) Just let everything stay as is understanding that he waives any issue on appeal with respect to breach of agreement except that your client can of course appeal the exceptional sentence.[10]

On April 7, the parties were again in court. The prosecutor began by stating, "The parties are here only because at this time I need to make a record regarding what's been going on with this case. I believe it's necessary for appeal purposes."[11] The prosecutor noted that she had been "very offended" by Lake's blaming the victim's mother in his "kite"; that she "had offered to allow him to withdraw his guilty plea"; and that Lake had "declined to do so at that time."[12] The prosecutor noted that she had offered "various remedies" in her letter of January 12, including "withdrawal of his guilty plea" or "being resentenced in front of another judge."[13] The prosecutor noted that she and defense counsel had been collaborating on how to obtain the necessary permission from the Court of Appeals until defense counsel had said, on April 5, that "his client no longer wishe[s] to be sentenced in front of another judge," but instead "wants the appeal to go through."[14] When asked to respond, defense counsel said only that "[w]e have not made any motion to try to change the trial court's rulings"; that "[w]e have appealed the trial court's decision up to the

---

[10] CP at 64.

[11] RP (Apr. 7, 2000) at 2.

[12] *Id.* at 3.

[13] *Id.* at 4.

[14] *Id.* at 5.

Court of Appeals";[15] and that the appellate court would have to decide whether "the State has breached its plea agreement."[16]

## I

■ The first question is whether the State breached the plea agreement. Lake did not raise that question before the trial court, but he now raises it here. He may do so because the question has constitutional magnitude.[17]

■ The State has a duty to fulfill the promises it makes in a plea agreement.[18] It breaches its duty if it fails to make, or if it makes but undercuts, a promised recommendation.[19] When considering whether there was a breach, a court asks whether the State's words and conduct, objectively viewed, contradict a promise.[20]

■ In this case, the State promised to recommend a SSOSA sentence subject to two conditions: A treatment provider had to find Lake amenable to treatment, and Lake had to pass a polygraph examination. Although Lake fulfilled both conditions before the December 10 sentencing hearing, the prosecutor failed to recommend, or she at least undercut, a SSOSA sentence; she said in effect that "it *was*

---

[15] *Id.* at 6.

[16] *Id.* at 6-7.

[17] RAP 2.5(a); *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001); *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997); *State v. Van Buren*, 101 Wn. App. 206, 212, 2 P.3d 991, *review denied*, 142 Wn.2d 1015 (2000).

[18] *State v. Talley*, 134 Wn.2d 176, 183, 949 P.2d 358 (1998); *Sledge*, 133 Wn.2d at 838-40.

[19] *Sledge*, 133 Wn.2d at 840; *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781, *review denied*, 138 Wn.2d 1002 (1999).

[20] *Talley*, 134 Wn.2d at 187; *Sledge*, 133 Wn.2d at 840; *Jerde*, 93 Wn. App. at 780. In *In re Pers. Restraint of Palodichuk*, 22 Wn. App. 107, 589 P.2d 269 (1978), for example, the prosecutor promised to recommend a suspended sentence and four years of probation. At sentencing, he made the agreed recommendation while also expressing "second thoughts." *Palodichuk*, 22 Wn. App. at 109. This court held that he had "tainted the sentencing process so that a breach in fact did occur." *Palodichuk*, 22 Wn. App. at 110.

the State's intention . . . to recommend SOSSA [sic]," [21] but that she now wanted to alert the Court that Lake's November 30 "kite" seemed to cast doubt on his suitability for a SSOSA alternative. As the prosecutor herself later recognized, these remarks did not perform the promise to recommend a SSOSA sentence, [22] and the State breached the plea agreement.

## II

■ The remaining question concerns remedy. As a general rule, the State's breach of a plea agreement results in a remand " 'for the defendant to choose whether to withdraw the guilty plea or specifically enforce the State's agreement.' " [23] As an exception, however, the defendant's choices may be limited if there are "compelling reasons" to do that. [24] "Compelling reasons" include but may not be limited to fraud and misrepresentation, [25] loss of an essential witness, [26] and loss of physical evidence. [27]

The State claims that the exception applies here. It asks rhetorically, "If defendant's goal . . . was to obtain relief of either withdrawal of plea or specific performance, then why

---

[21] RP (Dec. 10, 1999) at 6.

[22] We distinguish the prosecutor's remarks from her filing of Lake's letter. We assume, without holding, that filing the letter would not have breached the agreement in the absence of the remarks. See *Talley*, 134 Wn.2d at 186 ("[M]erely presenting relevant evidence to the sentencing court and responding to its inquiries is an appropriate fulfillment of the prosecutor's duty . . . ."); *State v. Gutierrez*, 58 Wn. App. 70, 76, 791 P.2d 275 (1990) ("A prosecutor is entitled to present all relevant facts, whether or not they fully support his recommendation."); *State v. Davis*, 43 Wn. App. 832, 837, 720 P.2d 454, *review denied*, 106 Wn.2d 1017 (1986) ("The trial judge had the right to be apprised of all of the facts . . . .").

[23] *Van Buren*, 101 Wn. App. at 217-18 (quoting *Jerde*, 93 Wn. App. at 782-83); *see also State v. Wakefield*, 130 Wn.2d 464, 473, 925 P.2d 183 (1996); *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988).

[24] *Miller*, 110 Wn.2d at 535.

[25] *State v. Schaupp*, 111 Wn.2d 34, 38-39, 757 P.2d 970 (1988); *State v. Shineman*, 94 Wn. App. 57, 61, 971 P.2d 94 (1999).

[26] *Miller*, 110 Wn.2d at 535.

[27] *Miller*, 110 Wn.2d at 535.

was he not willing to avail himself of these remedies when the State was offering them without the necessity of taking an appeal?"[28] Answering its own question, it asserts "that he hopes the delay caused by the appellate process results in prejudice to the State's ability to prove its case,"[29] and that "[t]he potential for prejudice is particularly great in cases, such as this one, where the victims are young children whose ability to recall distant events is frequently poor."[30] It supports its argument by quoting a recent observation made by this court:

> [A] defendant suffers no penalty for failing to avail himself of the existing remedies before the sentencing judge, who is in the best position to cure the breach. . . . A defendant who challenges the sentence before the trial court will be immediately faced with the decision of revoking his plea and going to trial or being resentenced before a different judge. By instead appealing, he will be able to delay this choice for the approximate two years of the appeal process, by which time the State's witnesses may be unavailable and/or memories may have faded.[31]

The exception may apply here. On January 12, 2000, the State offered in writing to agree with Lake on any one of the following remedies: withdrawal of his plea, resentencing before a different judge, or continuing the appeal of the exceptional sentence. On April 7, 2000, the State again offered, this time on the record in open court, to agree with Lake on any one of the same three remedies. This court had jurisdiction of the case at those times and, given the circumstances, surely would have approved a remedy agreed upon by both sides.[32] Lake refused to agree to any one of these remedies, even though he could not reasonably have expected different or greater relief on appeal. He did not give a legally plausible reason for this peculiar and

---

[28] Br. of Resp't at 13.

[29] Br. of Resp't at 14-15.

[30] Br. of Resp't at 15.

[31] *Van Buren*, 101 Wn. App. at 212 n.2.

[32] RAP 7.3.

seemingly arbitrary stance, and we do not perceive any— unless, as the State says, he was vying for relief through delay. If the State lost significant evidence after making its offers in writing and on the record, but before the termination of this appeal, there are "compelling reasons" not to allow Lake to withdraw his plea and thus force a trial.

We cannot determine from the present record whether the exception does apply here. The record simply does not show, for no one has yet litigated, whether the State lost significant evidence after offering to allow Lake to choose among remedies. If the State makes such a showing on remand, Lake should be resentenced before a different judge, but not allowed to withdraw his plea. If the State does not make such a showing on remand, Lake should be allowed to choose between resentencing before a different judge or withdrawing his plea. The State cannot make such a showing merely by relying on generalities (e.g., that the memories of children tend to dim after a long period of time); instead, it must establish the loss of testimony or physical evidence significant and necessary *to this case*.

Reversed and remanded for further proceedings.

HUNT, A.C.J., and SEINFELD, J., concur.