2004 UT App 222

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffrey Randall SMIT aka Jeffrey Randall Cates, Defendant and Appellant.**

**No. 20020505–CA.**

Court of Appeals of Utah.

July 1, 2004.

Preston S. Howell, West Valley City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Matthew D. Bates, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., BENCH, Associate P.J., and THORNE, Jr., J.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Jeffrey Randall Smit (Defendant) appeals the trial court's denial of his motion to withdraw his guilty plea. We affirm.

## BACKGROUND

¶ 2 The State of Utah charged Defendant with two counts of criminal nonsupport, a third-degree felony. The parties entered a plea agreement, whereby Defendant would plead guilty to one count of criminal nonsupport and pay full restitution for all amounts of back support. In exchange, the State promised "to recommend that any sentence imposed be suspended and that [Defendant] be granted probation."

¶ 3 During the change of plea hearing, the trial court asked Defendant, "In terms of your agreement with the State of Utah . . . is there anything further to the agreement?" Defendant informed the court that "the State is not seeking any jail time in sentencing in this matter." The State did not object to this statement. The court then advised Defendant that it was not bound by the plea agreement and that it could sentence Defendant to prison for up to five years. The court did not inform Defendant about the possibility of jail time as a condition of probation. *See* Utah Code Ann. § 77–18–1(8)(a)(v) (2003) ("While on probation, and as a condition of probation, the court may require that the defendant . . . serve a period of time, not to exceed one year, in a county jail. . . ."). Prior to sentencing, the court received a presentence report from Adult Probation and Parole (AP & P), recommending that the court sentence Defendant to ninety days in jail.

¶ 4 At the sentencing hearing on June 4, 2002, the prosecutor recommended that Defendant "do a minimum of at least three months, if not six months in jail. That will give him a chance to think about what has happened, to give him a wake up call. . . ."

Defendant objected and called the court's attention to the State's promise to recommend that "any sentence imposed be suspended," and also that the "State is not seeking any jail time." Neither the court nor the State could recall whether a recommendation of no jail time was part of the plea agreement. The court called a recess so the parties could listen to the tapes of the plea hearing. Upon reconvening, the State withdrew its affirmative recommendation for jail. The court then stated, "Apparently, the recommendation that was part of the agreement was that it was to impose no jail sentence." The State answered, "Correct." The court, during the hearing on the motion to withdraw plea, clarified that it imposed the sentence "under the impression that the State's recommendation was that [it] should not send [Defendant] to jail—or to prison and [it] should not impose, as a condition of probation any jail sentence." After considering both AP & P and the State's recommendations, the court suspended the sentence of five years in prison and placed Defendant on probation for thirty-six months. As part of probation, the court sentenced Defendant to ninety days in jail.

¶ 5 On June 18, 2002, Defendant filed a motion to withdraw his guilty plea for good cause because the State breached the plea agreement by recommending jail time, despite its subsequent withdrawal of that recommendation. The court denied the motion concluding that the State cured the breach by withdrawing its affirmative recommendation for jail. On appeal, Defendant argues that the trial court (1) abused its discretion by not finding good cause to withdraw plea when the State breached the plea agreement, and (2) violated rule 11 of the Utah Rules of Criminal Procedure by not informing Defendant of the possibility of jail time as a condition of probation.

¶ 6 On June 10, 2002, Defendant entered the Salt Lake County Jail to serve his ninety-day jail sentence. Defendant completed his sentence on August 22, 2002 and was released.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 First, Defendant claims the trial court abused its discretion by denying his motion to withdraw his guilty plea. " 'We review a trial court's denial of a motion to withdraw a guilty plea under an "abuse of discretion" standard, incorporating the "clearly erroneous" standard for the trial court's findings of fact made in conjunction with that decision.' " *State v. Lehi*, 2003 UT App 212, ¶ 7, 73 P.3d 985 (citations omitted). Second, Defendant argues for the first time on appeal that the trial court committed plain error by violating Utah Rule of Criminal Procedure 11(e)(5) in not informing Defendant about the possibility of one year in jail as a condition of probation. Plain error is a question of law reviewed for correctness. *See State v. Tarnawiecki*, 2000 UT App 186, ¶ 6, 5 P.3d 1222.

## ANALYSIS

### I. Breach of Plea Agreement

#### A. Suggestion of Mootness

¶ 8 The State filed a motion for suggestion of mootness pursuant to rule 37 of the Utah Rules of Appellate Procedure.[1] The State argues that Defendant's completion of his jail sentence and release from jail moots his claim that the prosecutor breached the plea agreement at sentencing by failing to recommend that Defendant serve no jail time. In particular, the State asserts that because the remedy for a prosecutor's breach is enforcement of the plea agreement and not withdrawal of the plea, Defendant's claim is moot as he has served his sentence and resentencing him will not affect his rights.

¶ 9 In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the United States Supreme Court recognized that a defendant who pleads guilty has a constitutional right to a remedy when a plea agreement is broken. *See id.* at 262, 92 S.Ct. at 499. The Court left the question of whether that remedy should be withdrawal of

---

1. Utah Rule of Appellate Procedure 37 provides, in relevant part, that "[i]t is the duty of each party at all times during the course of an appeal to inform the court of any circumstances which have transpired subsequent to the filing of the appeal which render moot one or more of the issues raised." *Id.*

the guilty plea or specific performance of the plea agreement to state courts to decide. *See id.* at 263, 92 S.Ct. at 499.

¶ 10 In Utah, there is no bright line rule as to whether the proper remedy for a prosecutor's breach of a plea agreement is specific performance or withdrawal of the plea. In dicta, the Utah Supreme Court in *State v. Garfield,* 552 P.2d 129 (Utah 1976), seems to leave discretion in the hands of the trial judge as to the appropriate remedy for breach of a plea agreement. *See id.* at 130. In *Garfield,* the defendant appealed the denial of his motion to set aside the plea asserting that the prosecutor had breached the plea agreement and seeking specific performance of the agreement or, in the alternative, the right to withdraw his guilty plea. *See id.*

¶ 11 On appeal, the Utah Supreme Court held that "[t]he ruling of the trial court denying defendant's motion to set aside his plea after sentencing must be sustained [because s]uch a motion is addressed to the sound discretion of the trial court, and there is no ground to indicate an abuse thereof." *Id.* (emphasis added) (footnote omitted).[2]

¶ 12 The State contends that the instant case is distinguishable from cases in which the prosecutor misleads the defendant as to the terms or value of a plea agreement. *See State v. Copeland,* 765 P.2d 1266 (Utah 1988); *State v. Bero,* 645 P.2d 44 (Utah 1982); *State v. Norris,* 2002 UT App 305, 57 P.3d 238.

¶ 13 First, in *Copeland,* the prosecution made promises in the plea agreement that the defendant could receive inpatient sex-offender treatment at a hospital rather than treatment in prison. *See* 765 P.2d at 1267. The trial court ratified this promise without informing the defendant that by statute the court lacked the discretion to place the defendant in treatment at a hospital or in prison. *See id.* at 1268. On appeal, the Utah Supreme Court held that such promises could induce a defendant to enter a guilty plea and that if a defendant is misled as to

"the nature and value of any promises made to him," it may render the guilty plea involuntary. *Id.* at 1274. The court further held that if a defendant pleads guilty "with an exaggerated belief in the benefits of his plea ... he should be allowed to withdraw his plea." *Id.* at 1275 (quotations and citation omitted). The court concluded that the "defendant must be allowed to withdraw his plea if the State made a promise *it did not or could not* fulfill." *Id.* at 1276 (emphasis added).

¶ 14 Second, in *Bero,* the Utah Supreme Court held that had there been a plea agreement in place, the defendant might have been entitled to specific performance; but because there was no meeting of the minds regarding the plea agreement, the proper remedy was withdrawal of the plea. *See* 645 P.2d at 47. Third, in *Norris,* the trial court and the State promised the defendant that he could pursue a claim for vindictive prosecution on appeal, but neither the court nor the State could fulfill that promise. *See* 2002 UT App 305 at ¶ 11, 57 P.3d 238. The trial judge never entered a final order disposing of the defendant's vindictive prosecution claim and thus, it could not be raised on appeal. *See id.* at ¶ 3. We held that because the defendant's "pleas were not made voluntarily with full knowledge of the consequences of pleading guilty[, the defendant] 'must be allowed to withdraw his [guilty] pleas.' " *Id.* at ¶ 13 (quoting *Copeland,* 765 P.2d at 1276 (second alteration in original)).

¶ 15 We agree with the State that in these types of cases the guilty plea is involuntary and withdrawal of the plea is the proper remedy. However, we do not read these cases to suggest that withdrawal of the guilty plea is a proper remedy *only* in cases where a plea agreement cannot be enforced.

¶ 16 Since *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), other state courts and the Tenth Circuit have allowed either remedy at the discretion of the trial judge. *See United States v. Brye,*

---

**2.** The State also cites *State v. Quintana,* 2002 UT App 166,¶ 13, 48 P.3d 249, in support of its contention that specific performance of the plea agreement is the proper remedy when a prosecutor breaches. However, the defendant in that case was appealing from an order denying her

motion to compel the State to honor the terms of the plea agreement. *See id.* at ¶ 1. The defendant did not seek withdrawal of her guilty plea, and there was no discussion of whether withdrawal of her guilty plea would be an appropriate remedy for the prosecutor's breach.

146 F.3d 1207, 1213 (10th Cir.1998) (holding that when the government has breached a plea agreement, it is preferable to remand to the trial court for a determination of the proper remedy, but when the government's breach is particularly egregious or intentional the proper remedy is withdrawal of the plea); *State v. Kennedy*, 139 Idaho 244, 76 P.3d 988, 989 (2003) (allowing either specific performance of the plea agreement or ·withdrawal of the guilty plea where the state breached the plea agreement); *State v. Rardon*, 296 Mont. 19, 986 P.2d 424, 426 (1999) (holding that it is within the discretion of the trial judge to determine whether the appropriate remedy for the prosecution's breach of a plea agreement is withdrawal of the guilty plea or specific performance of the agreement). *But see State v. Lake*, 107 Wash.App. 227, 27 P.3d 232, 234 (2001) (holding that in breach of plea agreement, the defendant may choose specific performance or withdrawal of the guilty plea, but that choice may be limited if there are compelling reasons like fraud, misrepresentation, loss of essential witness, or loss of physical evidence).

¶ 17 We conclude that when a plea agreement is breached by the prosecutor, the proper remedy is either specific performance of the plea agreement or withdrawal of the guilty plea both at the discretion of the trial judge. Accordingly, if the prosecutor in the instant case had breached the plea agreement, we would remand to the trial court for a determination of the appropriate remedy. Thus, the issue is not moot. However, this result is unnecessary because we conclude that the prosecutor did not breach the plea agreement.

## B. No Breach of Plea Agreement

▉ ¶ 18 "A plea of guilty ... may be withdrawn only upon good cause shown and with leave of the court." Utah Code Ann. § 77–13–6(2)(a) (2002).[3] Good cause is shown when the Defendant does not knowingly and voluntarily enter the plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). For instance, good cause exists where "the prosecution breaches its promise with respect to an executed plea agreement, [because] the defendant pleads guilty on a false premise." *Id.; see Santobello*, 404 U.S. at 262, 92 S.Ct. at 499 ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *Copeland*, 765 P.2d at 1276 (holding that good cause is established when the "State [makes] a promise it [does] not or [cannot] fulfill").

¶ 19 Defendant argues that the prosecutor breached the plea agreement by recommending jail time[4] despite the prosecutor's subsequent withdrawal of that recommendation. The State concedes that its initial recommendation for jail time breached the plea agreement, but argues that by promptly withdrawing its recommendation, it cured the breach. In turn, Defendant argues that the cure was ineffective because "[i]t was ... insufficient to erase in the court's consciousness the State's real recommendation."

¶ 20 A similar issue was raised in *Santobello*, 404 U.S. at 259, 92 S.Ct. at 497. The trial court in that case had stated, "I am not at all influenced by what [the prosecutor] says," but then imposed the exact sentence recommended by the prosecutor. *Id.* The Court briefly addressed the influence over the trial court, noting that "[w]e need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for

---

**3.** In 2003, this provision of the Utah Code was amended to read: "A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77–13–6(2)(a) (2003).

**4.** Defendant also asserts that the State breached the plea agreement when AP & P recommended jail time because AP & P is bound by the plea agreement as an agency of the State of Utah. In

*State v. Thurston*, 781 P.2d 1296 (Utah Ct.App. 1989), we addressed the same argument and concluded that state agencies, other than the prosecutor, are not bound to plea agreements because to bind other state agencies "to a prosecutor's sentencing recommendation would limit the trial court's access to all of the facts and, consequently, hinder the appropriate exercise of the judge's discretion." *Id.* at 1300 (footnote omitted).

the plea. [The sentencing judge] stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that." *Id.* at 262, 92 S.Ct. at 499.

¶ 21 As in *Santobello,* the trial court stated that it was not influenced by the State's initial recommendation and it "considered all . . . recommendations and came . . . to [its] judgment, that 90 days was an appropriate period of time as a condition of probation." The only evidence supporting Defendant's argument that the trial court was influenced by the State's initial recommendation is the fact that the trial court imposed a sentence consistent with that suggested by the State. Like *Santobello,* this is not enough to establish that the trial court was influenced by the State's recommendation. *See id.* Therefore, we conclude that the trial court did not abuse its discretion in denying Defendant's motion to withdraw plea because the State cured its initial breach of the plea agreement, and there is no evidence to support Defendant's contention that the trial court was influenced by the initial recommendation.

■■ ¶ 22 Defendant also argues that the trial court abused its discretion in denying Defendant's motion to withdraw his plea because he was not aware that probation could include jail time, *see* Utah Code Ann. § 77–18–1(8)(a)(v) (2003), and thus, he did not knowingly and voluntarily enter the plea agreement. While Defendant was never directly informed on the record that probation included the possibility of jail time, the record reveals lengthy discussions about whether the State had promised not to recommend jail time as part of the plea agreement.

¶ 23 During the plea hearing, the trial court asked Defendant if he had anything to add to the written plea agreement. Defendant stated, "the State is not seeking any jail time." Again, during the sentencing hearing, after the State recommended jail time, the trial court read the written plea agreement and found the agreement unclear as to

whether the State had promised to recommend no jail time. Thus, the trial court adjourned to allow the parties to consult the record. While the record never connects jail time as a condition of probation, there would likely be no other reason to discuss jail because the statutory sentence included prison time and the written plea agreement was clear as to the State's obligation to recommend that any prison sentence be suspended.

¶ 24 There is also no indication in the record that Defendant did not understand that these discussions were about jail as a condition of probation. Thus, because there is evidence to suggest that Defendant understood probation to include the possibility of jail time, we hold the trial court's finding that Defendant knowingly and voluntarily entered his guilty plea was not clearly erroneous and the court did not abuse its discretion in denying Defendant's motion to withdraw plea.

## II. Rule 11 Claim

¶ 25 Defendant argues for the first time on appeal that the trial court committed plain error by not strictly complying with rule 11(e)(5) of the Utah Rules of Criminal Procedure. In response, the State argues that this court lacks jurisdiction because Defendant failed to raise this issue in his motion to withdraw his plea. Before addressing Defendant's plain error argument, we first address jurisdiction.

### A. Jurisdiction

■■■ ¶ 26 This court has jurisdiction to review Defendant's rule 11 claim for plain error because Defendant filed a timely motion to withdraw his guilty plea. Utah law requires that a motion to withdraw plea be made "within 30 days after the entry of the plea." Utah Code Ann. § 77–13–6(2)(b) (2002).[5] "[T]he time limit on withdrawing a guilty plea is jurisdictional" and unless a motion to withdraw plea is filed within thirty days, an appellate court cannot review a

---

5. In 2003, the Utah State Legislature amended section 77–13–6(2)(b) to read:

A request to withdraw plea of guilty or no contest, except for a plea in abeyance, shall be made by motion before sentence is announced. Sentence may not be announced unless the

motion is denied. For a plea in abeyance, a motion to withdraw the plea shall be made within 30 days of pleading guilty or no contest. Utah Code Ann. § 77–13–6(2)(b) (2003). This statute does not apply to this case but nonetheless supports our outcome.

guilty plea. *State v. Dean*, 2002 UT App 323, ¶ 6, 57 P.3d 1106, *rev'd on other grounds*, 2004 UT 45; *see also State v. Reyes*, 2002 UT 13, ¶ 3, 40 P.3d 630 (holding that appellate court lacked jurisdiction to review rule 11 claim because defendant failed to file motion to withdraw plea within thirty days). So long as a court has jurisdiction, "it may choose to review an issue not properly preserved for plain error." *Reyes*, 2002 UT 13 at ¶ 4, 40 P.3d 630.

¶ 27 In this case, Defendant filed a motion to withdraw plea within thirty days. Therefore, this court has jurisdiction to review Defendant's rule 11 claim raised for the first time on appeal for plain error.[6]

### B. Plain Error

▮ ¶ 28 To demonstrate plain error, "a defendant has the burden of showing '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful.' " *State v. Tarnawiecki*, 2000 UT App 186, ¶ 11, 5 P.3d 1222 (quoting *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993)). Defendant argues that an error exists because the trial court failed to inform Defendant that probation carried the possibility of up to one year in the county jail. Rule 11(e)(5) requires the trial court to make sure that a "defendant knows the minimum and maximum sentence ... that may be imposed for each offense to which a plea is entered." Utah R.Crim. P. 11(e)(5). "Rule 11(e) squarely places on trial courts the burden of ensuring that Constitutional and [r]ule 11(e)

requirements are complied with when a guilty plea is entered." *State v. Gibbons*, 740 P.2d 1309, 1312 (Utah 1987). While trial courts must strictly comply with rule 11, *see Tarnawiecki*, 2000 UT App 186 at ¶ 12, 5 P.3d 1222, it is unclear whether a trial court must inform a defendant about the conditions of probation, a sentence imposed within the discretion of the trial court. *See* Utah Code Ann. § 77–27–1(10) (2003) (" 'Probation' is an act of grace by the court suspending the imposition or execution of a convicted offender's sentence upon prescribed conditions.").

¶ 29 Under federal law and Utah law, trial courts are required to inform defendants about the direct consequences of a guilty plea, *see* Fed.R.Crim.P. 11(b)(1)(H); *United States v. Hurlich*, 293 F.3d 1223, 1230–31 (10th Cir.2002); *State v. McFadden*, 884 P.2d 1303, 1304 (Utah Ct.App.1994), but not necessarily "every collateral consequence of [a] plea." *Hurlich*, 293 F.3d at 1230. A "direct" consequence is one that will have a "definite, immediate and largely automatic effect on the range of the defendant's punishment" such as lack of eligibility for parole. *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.1973). A "collateral" consequence is one that is discretionary, *id.*, such as the possibility of a concurrent state sentence, *see United States v. Degand*, 614 F.2d 176, 177–78 (8th Cir.1980), or the possibility of revocation of parole. *See Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977).

---

**6.** The State argues that under *State v. Reyes*, 2002 UT 13, 40 P.3d 630, we lack jurisdiction to address Defendant's rule 11 claim because Defendant did not assert a rule 11 violation in his motion to withdraw his plea. In particular, the State contends that when a defendant appeals from the denial of his motion to withdraw his guilty plea, we have jurisdiction to correct plain errors committed in the motion hearing but not to correct plain errors committed in the plea hearing. However, *Reyes* did not address whether failure to raise a rule 11 violation in a timely motion to withdraw a guilty plea precludes appellate review for plain error. Rather, *Reyes* held that because the appellant in that case failed to move to withdraw his guilty plea within thirty days, the court lacked jurisdiction to address his rule 11 challenge to the plea, even for plain error. *See id.* at 631. Furthermore, our supreme court has addressed this issue since oral

argument in Defendant's case. *See State v. Dean*, 2004 UT 63, 505 Utah Adv. Rep. 3, 95 P.3d 276; *see also State v. Hittle*, 2004 UT 46. In *State v. Dean*, the State argued "that appellate review of a trial court's denial of a defendant's motion to withdraw is limited to the denial of the motion itself" and, therefore, "the record of the plea proceedings, the plea colloquy, or the plea statement" should not be considered. 2004 UT 45 at ¶ 8. However, the supreme court did not agree and specifically held that a "reviewing court may consider the record of the plea proceedings, including the plea colloquy and plea affidavit or statement" and concluded that "review of a trial court's denial of a motion to withdraw is not limited to the denial of the motion itself." *Id.* at ¶ 12. Accordingly, we conclude that we have jurisdiction to review Defendant's rule 11 claim for plain error as he timely filed a motion to withdraw plea.

¶ 30 We need not decide whether the failure to inform Defendant of the possibility of jail time as a condition of probation is a direct or collateral consequence of Defendant's guilty plea. We conclude that even were we to decide it was a direct consequence, which we do not decide, any error would not have been obvious to the court. As discussed above, the law is unclear as to whether the trial court committed error by not informing Defendant about the consequences of probation. Because the law is unclear, the error would not have been obvious.

## CONCLUSION

¶ 31 The trial court did not abuse its discretion in denying Defendant's motion to withdraw plea because the State did not breach the plea agreement and because the court's factual finding that Defendant knowingly and voluntarily entered his guilty plea was not clearly erroneous. We also hold that any alleged rule 11 violation committed in advising Defendant of possible jail time as a condition of probation was not obvious error. Accordingly, we affirm.

¶ 32 I CONCUR: RUSSELL W. BENCH, Associate Presiding Judge.

THORNE, Judge (concurring in the result):

¶ 33 Although I respectfully concur in the result reached by the majority in this case, I cannot join in certain aspects of the majority's analysis.

¶ 34 In this case, Smit entered into a plea bargain with the State wherein he would be allowed to plead guilty to one third degree felony, and the State would recommend that the trial court suspend any sentence and grant Smit probation. The written plea agreement signed by Smit articulated most, if not all, of the rule 11 requirements, including explaining that his plea created the possibility of incarceration. *See* Utah R. Crim P. 11. The trial court took Smit's plea, explained the rights he was waiving, and informed him that the court could sentence him to be incarcerated for between zero and five years. Smit accepted this information

and pleaded guilty. To this point, Smit does not complain about the proceedings. However, when asked at the sentencing hearing, and after hearing Smit assert that the State had promised to recommend no jail time, the prosecutor conceded that the State had agreed to recommend probation. The prosecutor added, however, that she would recommend that the court incarcerate Smit for at least three months as a condition of probation. Because of this dispute, the trial court recessed to allow the parties to review the agreement, and only after reviewing the details of the agreement did the prosecutor withdraw her request for jail time. The court then sentenced Smit to serve zero to five years at the state prison, but suspended the sentence and placed Smit on probation. However, as a condition of his probation, the court sentenced Smit to ninety days of incarceration.

¶ 35 Although the State's decision to ask the court to incarcerate Smit seems to have been the result of confusion over the details of the agreement, there is no question that the State's request violated the agreement, however temporarily. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499 (1971) (stating that "a constant [safeguarding] factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). However, under *Santobello,* in the face of the State's breach, Smit had two choices from which he could elect, depending on the gravity of the breach: he could elect to ask for specific performance, which may include a request for a different sentencing judge, or for the opportunity to withdraw his plea. *See id.* at 263, 92 S.Ct. at 499. Smit requested specific performance, but not a different judge. The State complied and withdrew its recommendation, and only then did the trial court pronounce sentence. Consequently, Smit elected his remedy *prior to* the court sentencing him. He effectively eliminated any possible reliance on the breach as grounds for his later motion to withdraw his plea. The fact that he could have, particularly with the benefit of hindsight, asked to be sentenced by a different judge is of no conse-

quence to the instant appeal. He did not ask, and does not argue on appeal that the trial court has a duty to, sua sponte, transfer the case to another judge. Accordingly, I would conclude that the State's breach of the plea agreement activated the *Santobello* remedies and that Smit's decision to seek specific performance was an election of the remedy of his choice. In so electing, Smit could not later attempt to elect the alternative remedy when he was dissatisfied with the outcome, and the trial court correctly denied his motion to withdraw his plea.

¶ 36 I also disagree with the majority's approach to Smit's argument concerning his incarceration and the trial court's duty under rule 11. Under rule 11, trial courts are duty-bound to provide defendants with several critical pieces of information that may or may not influence a defendant's decision concerning a guilty plea. *See State v. Gibbons*, 740 P.2d 1309, 1312 (Utah 1987). In this case, two particular requirements of rule 11 are of central importance. First, Smit was informed that the trial court was not bound by any sentencing recommendation made by the State in this matter. *See* Utah R.Crim. P. 11(g)(2). From the record, Smit was informed of, and he clearly understood, the court's discretionary role in the sentencing calculus. After hearing this information, Smit opted to continue with the proceedings. Second, the trial court was required to explain the range of sentencing possibilities that Smit faced if he pleaded guilty to a third degree felony. *See* Utah R.Crim. P. 11(e)(5). Consequently, the trial court informed Smit that it had the authority to sentence him to incarceration for a period of up to five years. *See* Utah Code Ann. § 76–3–203(3) (2003). Therefore, Smit was fully apprised that by pleading guilty he faced the possibility of incarceration for up to five years—regardless of his plea agreement with the State. His later protestations that he did not understand that probation might also include incarceration is unavailing. He knew that incarceration was a possibility, yet he affirmatively decided to plead guilty.

¶ 37 Rule 11 merely requires that the trial court inform the defendant of the range of possibilities, a duty that the trial court, in this case, clearly performed. The fact that Smit was dissatisfied with his eventual sentence does not demonstrate a rule 11 violation, and the majority's discussion of "collateral consequences" is unnecessary. Smit was informed that the court was the final arbiter of sentencing and that by pleading guilty he faced the possibility of incarceration. It is of no import that his incarceration was also attached to a probation order. Accordingly, I disagree with the majority's foray into plain error as well as its decision to address Smit's incarceration as somehow outside of the range of sentencing explained to Smit by the trial court.

¶ 38 Although I disagree with certain aspects of the majority approach, I do not disagree with the outcome. Therefore, I concur in the result.