2014 UT App 288

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
HENDRICKS M. LINDSEY,
Defendant and Appellant.

Memorandum Decision
No. 20120962-CA
Filed December 11, 2014

Eighth District Court, Duchesne Department
The Honorable Lyle R. Anderson
No. 111800341

Grant W.P. Morrison and Court J. Klekas II,
Attorneys for Appellant

Sean D. Reyes and Erin Riley, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and JOHN A. PEARCE concurred.

ROTH, Judge:

¶1 Hendricks M. Lindsey pleaded guilty to one count of third degree felony child abuse. The district court sentenced him to an indeterminate term of zero to five years in prison. Lindsey now appeals this sentence, claiming three errors: (1) the district court wrongly sentenced him without first allowing him to obtain a presentence investigation report (PSI), (2) the prosecutor breached the plea agreement by not recommending a jail sentence rather than prison, and (3) the district court wrongly considered letters from three non-victims at the sentencing hearing. We affirm.

¶2    Lindsey was charged with second degree felony child abuse based on allegations that he knowingly inflicted serious physical injury on a child when he hit the child until she was "black and blue." On July 26, 2012, Lindsey pleaded guilty to a reduced charge of third degree felony child abuse. One of the terms of the plea agreement was that the prosecutor would recommend that Lindsey serve his sentence in the county jail, rather than at the state prison, if Lindsey obtained a PSI for use at sentencing. The district court scheduled sentencing for September 27, 2012, and referred Lindsey to Adult Probation and Parole (AP&P) for a PSI in the meantime.

¶3    Lindsey arrived late for his scheduled appointment with AP&P on August 27, 2012, and he had not yet completed the required paperwork when he arrived. AP&P was unable to adjust its schedule to conduct Lindsey's interview later in the day. At the subsequent sentencing hearing, defense counsel sought a continuance so that Lindsey could reschedule the appointment to complete the PSI. The prosecutor agreed to the continuance but "ask[ed] that Mr. Lindsey be taken into custody and held until . . . sentencing" because he was apparently concerned that Lindsey might further delay sentencing by failing to keep his AP&P appointment a second time. In apparent agreement, the district court gave Lindsey a choice between "go[ing] ahead with sentencing . . . without any information from Adult Probation and Parole" or continuing the sentencing hearing to allow him time to "get a pre-sentence report," with the condition that he "sit in jail until sentencing." Against the advice of his counsel, Lindsey chose to forgo the PSI because he did not wish to serve time in jail during the interim.

¶4    The court then continued the sentencing hearing for two weeks, until October 11, 2012, with Lindsey remaining out of custody.[1] The day before the second sentencing hearing, defense

---

1. Because the prosecutor had earlier been informed that Lindsey was seeking a continuance, he had told the victim and her family

(continued...)

counsel filed a stipulated motion to continue on the basis that Lindsey had decided that he did wish to obtain a PSI. At the hearing the next day, the prosecutor informed the court that his stipulation to the continuance had been conditioned upon receiving "an answer in time for me to call the victim[] so that [she and her family] didn't have to travel out here for Court." Because the district court had not yet ruled on the continuance request and the victim and her family had traveled two hours to be present for sentencing, the prosecutor withdrew his stipulation. The district court denied Lindsey's motion to continue on the basis that "two weeks ago . . . Mr. Lindsey chose this course." The court then proceeded with sentencing.

¶5    The prosecutor stated that he would not be recommending that Lindsey serve his sentence in jail instead of prison because "[i]t was implied that the recommendation would only be made if a PSI was ordered and used at sentencing." Lindsey's attorney agreed that the prosecutor's representation about the plea agreement was "absolutely accurate" and that the "idea was that we would have a PSI" that "would flesh in more of [Lindsey's] background" for the court to assess the prosecutor's recommendation that the sentence be served in jail.

¶6    Next, the prosecutor told the court that he had letters written by one of Lindsey's neighbors, a babysitter, and a crisis center representative that he intended to read into the record. Lindsey objected on the ground that he had not been previously provided with notice of the letters, which he characterized as highly inflammatory and prejudicial, and therefore had "not ha[d] the opportunity to present a rebuttal." The court

---

that they did not need to be present for the September 27 sentencing hearing. But he advised the court that the victim still "want[ed] to address the Court before sentencing." Accordingly, the district court postponed sentencing for two weeks to allow the victim and her family to be present.

responded that it was possible that the court would "determine that there's something here that would be a surprise to your client" and if that were the case, Lindsey "would have a chance to present evidence to counter it." However, the court determined that because it is "supposed to consider a wide range of things" in determining a sentence, it would hear the letters. The first letter was from a neighbor, who wrote that he had seen handprint-shaped black and blue bruises on the child's legs after the incident underlying Lindsey's guilty plea. The neighbor further reported that Lindsey's "lack of control or care of a child was bad" and out of proportion to the child's behavior. The neighbor further wrote that he confronted Lindsey, who showed "no remorse" for his actions. The second letter was from a babysitter who described an incident where Lindsey yelled at her and punched a wall in her presence. The third letter was from a crisis center representative who believed that Lindsey had followed the victim's family to a domestic violence shelter. After the prosecutor read the letters, the victim and her family made statements about various violent acts committed against them by Lindsey, including the abuse to which Lindsey pleaded guilty.

¶7     Lindsey gave his own statement, in which he explained to the court that he had spanked the child until she had bruises on one leg and for that he "will deeply, deeply be sorry, forever." He also offered an explanation for some of his behavior toward the family, describing it primarily as responsive to "things that were going on in the house that I did not approve of." Lindsey then described the counseling he had undergone since the incident and claimed that he had not committed any other violent crimes. Lindsey did not offer any direct rebuttal to the written statements from the three non-victims, except when he described his current feelings of remorse, nor did he ask the court for an opportunity to put on further rebuttal evidence.

¶8     The district court sentenced Lindsey to zero to five years in prison. In reaching this decision, the court explained that it had heard nothing that would explain "why [the victim's] family would, all of a sudden, turn on [Lindsey]" and make up the

allegations. It also found the neighbor's statements about the effects of the abuse and Lindsey's reaction to it to be particularly "important." Lindsey now challenges three aspects of the sentencing decision: (1) the district court's denial of his motion for a continuance to obtain the PSI, (2) the prosecutor's purported breach of the plea agreement when he did not recommend a jail sentence and the court's failure to recognize the breach, and (3) the court's consideration of the letters from the non-victims.

I. Denial of the Motion to Continue Sentencing to Obtain a PSI

¶9     Lindsey first challenges the district court's denial of his motion to continue sentencing for the purpose of completing a PSI. According to Lindsey, the court's failure to permit him to obtain a PSI resulted in the court not having all the legally relevant information it needed to sentence him. The State counters that a PSI is not essential for sentencing and that the district court therefore acted within its discretion when it denied Lindsey's second request for a continuance.

¶10    "[T]he [district] court may, with the concurrence of the defendant, continue the date for the imposition of sentence for a reasonable period of time for the purpose of obtaining a presentence investigation report . . . ." Utah Code Ann. § 77-18-1(5)(a) (LexisNexis 2012). "Use of the permissive term 'may' plainly indicates that the trial court is not required to continue sentencing to obtain a presentence investigation report." *State v. Madsen*, 2002 UT App 345, ¶ 14, 57 P.3d 1134. Consequently, we will disturb a district court's decision to deny a motion to continue only if the court abused its discretion. *Clarke v. Clarke*, 2012 UT App 328, ¶ 19, 292 P.3d 76; *see also Madsen*, 2002 UT App 345, ¶ 14 (concluding that the district court has discretion to sentence a defendant without ordering a presentence investigation report). We likewise review sentencing decisions for abuse of discretion. *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167.

¶11　We conclude that the district court did not abuse its discretion when it determined that a continuance was not warranted in this case. Lindsey had previously been given an opportunity to obtain the PSI, but due to his own dilatory behavior, he was unable to complete the PSI interview on the scheduled date. Nevertheless, the district court was willing to give Lindsey a continuance to obtain the PSI, but on the condition that he be placed in custody in the meantime to ensure that the PSI was done this time. Such a condition was within the court's discretion under the circumstances.[2] Despite the offered

---

2. Lindsey asserts that the district court found that he was "not responsible for there being no pre-sentence report available" on the date of the original sentencing hearing after he was late for his original appointment. Lindsey, however, reads the district court's statement in isolation. When read in context, it is apparent that the court was differentiating between delay within Lindsey's control and delay outside of it and excusing only the latter.

At the initial sentencing hearing, Lindsey represented to the court that although his AP&P interview was a month after he entered the guilty plea, he had scheduled the earliest available appointment. He admitted that he had arrived late for his appointment but claimed that it was AP&P's double booking that prevented him from completing the interview, not his tardiness. Lindsey also reported that he had been unable to reschedule the appointment because he needed to be re-referred from the court. Finally, Lindsey informed the court that "even if my packet had been filled out, . . . [AP&P] told me it was not enough" time because "the PSI would take six weeks from" the date of the interview.

In response, the court stated, "*If* that's true"—meaning AP&P's six-week delay in generating reports—"you're[] probably not responsible for there being no pre-sentence report available today," because the sentencing hearing was just four weeks after Lindsey's original AP&P appointment. (Emphasis added.) The court, however, found Lindsey to be "responsible

(continued...)

continuance and contrary to his attorney's advice to obtain the PSI, Lindsey advised the court that he "would prefer sentencing" to occur sooner without the PSI than later with it. Lindsey then waited until two weeks later, on the eve of the rescheduled sentencing hearing, to inform the court that he did want to continue sentencing until the PSI was completed.[3] By that time, however, it was too late to notify the victim and her family, who had traveled two hours to attend the rescheduled hearing. Given that Lindsey elected to waive the PSI and then sought to undo that waiver only at a point where a delay would impose further burdens on the victim and her family, who had traveled a long way for an emotionally difficult proceeding, the district court did not abuse its discretion in denying Lindsey's request for a continuance to obtain the PSI. *See id.*

¶12    Furthermore, the absence of a PSI did not mean that the district court failed to have all legally relevant information

---

for there not being a pre-sentence report two weeks from today," a date six weeks from Lindsey's original AP&P appointment. The court further faulted Lindsey for "tak[ing] any risks with that appointment" when he was aware that "it takes 30 days to get into Adult Probation and Parole." The court was also dissatisfied with Lindsey's failure to take reasonable measures to reschedule the AP&P appointment "because the way [he] approached this meant that . . . if they were going to schedule another appointment for [Lindsey], [the appointment] would have been about today." The court's statements indicate that it was willing to excuse a two-week delay that was beyond Lindsey's control. It was holding Lindsey responsible, however, for creating a situation where, in order to now complete the PSI, sentencing would have to be delayed for more than two months from the date originally set for sentencing because the process would have to begin anew.

3. At that point, Lindsey stated that he was willing to be taken into custody until the PSI could be completed.

available for sentencing, as Lindsey claims. "A sentence in a criminal case should be appropriate for the defendant in light of his background and the crime committed and also serve the interests of society which underlie the criminal justice system." *State v. McClendon*, 611 P.2d 728, 729 (Utah 1980). Thus, "the court shall receive any testimony, evidence, or information the defendant or the prosecuting attorney desires to present concerning the appropriate sentence." Utah Code Ann. § 77-18-1(7).

¶13    Lindsey urges us to interpret the language that "the court shall receive any testimony, evidence, or information the defendant . . . desires to present," *see id.*, to mean that the district court was *required* to consider the information that would be contained in a PSI if the defendant desired to present it. But as we previously discussed, district courts have considerable discretion in deciding whether or not to order a PSI in the first instance, *see Madsen*, 2002 UT App 345, ¶ 14, and we have already concluded that the court's decision to deny Lindsey's requested continuance to allow him to obtain one was within the court's discretion as well. Moreover, the district court received all of the information that both the prosecutor and Lindsey wanted to present, including information regarding the nature of the crime, Lindsey's relationship with the victim and her family, Lindsey's health, his prior criminal history, and his rehabilitation efforts and needs. The district court also heard from Lindsey himself, who responded to the family's negative description of his behavior toward them with his own explanation of his conduct and description of their relationships and also expressed regret for his treatment of the victim.

¶14    Accordingly, we conclude that the district court did not abuse its discretion by sentencing Lindsey without a PSI. *See id.* ¶ 15; *see also State v. Waterfield*, 2011 UT App 27, ¶ 5 n.2, 248 P.3d 57 (stating that there was no basis for setting aside the sentence where "consultation of a PSI [in sentencing] is not mandatory" and the "[d]efendant waived his right to a PSI . . . [when] he agreed to be immediately 'resentenced' without the benefit of a PSI").

## II. The Claimed Breach of the Plea Agreement

¶15 Lindsey's next challenges relate to the plea agreement. First, Lindsey contends that the district court plainly erred when it failed to recognize that the prosecutor had breached the plea agreement by not recommending that Lindsey's sentence be served in jail rather than in prison. To prevail on plain error review, the appellant must demonstrate: "(i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error there is a reasonable likelihood of a more favorable outcome for the appellant, or, phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). "If any one of these requirements is not met, plain error is not established." *Id.* at 1209. Lindsey has not established any error.

¶16 "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *State v. Garfield*, 552 P.2d 129, 130 (Utah 1976) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). If the prosecutor breaches the agreement, then the court must afford the defendant a remedy, either by permitting the withdrawal of the plea or requiring the State to perform. *State v. Smit*, 2004 UT App 222, ¶ 17, 95 P.3d 1203. At the sentencing hearing, however, Lindsey's defense counsel agreed that the prosecutor's obligation to recommend jail instead of prison was conditioned upon the completion of a PSI. Lindsey concedes as much in his appellate brief: "Mr. Lindsey's plea agreement came with the understanding that the prosecution would recommend jail time in lieu of prison if Mr. Lindsey would undergo the PSI and the resulting report was used in sentencing." It is undisputed that a PSI was not completed prior to sentencing. Because Lindsey never obtained a PSI, the prosecutor was not bound to recommend jail instead of prison. *See State v. Dunn*, 2009 UT App 308U, para. 4 (explaining that because the defendant had failed to perform his end of the bargain, "the State's obligation under the plea agreement was never triggered"). Thus, there was no breach, and the district court had no obligation to take any

corrective measures. Without a showing of error, Lindsey has not carried his burden of demonstrating that the district court committed plain error.

¶17    Next, Lindsey argues that the prosecutor's breach of the plea agreement violated his right to due process. Because we have rejected his contention that a breach occurred, we need not consider the constitutional question.

¶18    Finally, Lindsey contends that the requirement that he obtain a PSI was only an implied condition and that "[t]o allow the prosecution to change a material portion of the plea agreement"—the recommendation of jail instead of prison— "based upon an implied condition . . . is unjust, and demonstrates a lack of good faith and fair dealing." This argument was raised for the first time in Lindsey's reply brief, and for that reason, we need not consider it. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903. In any event, the argument is not persuasive because Lindsey admitted, at both sentencing and on appeal, that he was aware that completing the PSI was a prerequisite to the prosecutor recommending that he serve his sentence in jail.

### III. The Court's Consideration of the Non-Victims' Letters

¶19    Finally, Lindsey asserts that the district court abused its discretion when it allowed, over Lindsey's objection, the prosecutor to read letters from three people—Lindsey's neighbor, a babysitter, and a crisis center representative—who were not victims or witnesses of his offense. According to Lindsey, Utah law limits the right to be heard at sentencing to the defendant and the victim or victims. We review a district court's sentencing decisions for abuse of discretion. *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167.

¶20    When imposing a sentence, the district court should "consider all legally relevant factors." *State v. Ricks*, 2014 UT App 85, ¶ 8, 325 P.3d 845 (per curiam). To facilitate the court's consideration of these factors, the court "shall receive any

testimony, evidence, or information the defendant or the prosecuting attorney desires to present concerning the appropriate sentence." Utah Code Ann. § 77-18-1(7) (LexisNexis 2012); *see also* Utah R. Crim. P. 22(a) ("Before imposing sentence the court shall afford . . . [t]he prosecuting attorney . . . an opportunity to present any information material to the imposition of sentence."). In other words, "trial judges may receive and consider a wide range of evidence concerning the defendant in fixing the penalty to be imposed," so long as that information is "reasonably reliable and relevant." *State v. Howell*, 707 P.2d 115, 118 (Utah 1985). Thus, Lindsey's contention that the district court was barred from considering the non-victims' statements finds no support in either statute or precedent.

¶21 The information in the letters satisfies the requirements that it be "reasonably reliable and relevant." *See id.* Certainly, information regarding the extent of harm to a victim, a defendant's attitude regarding the offense, and other violent acts is relevant to the district court's determination of the appropriate sentence for the violent crime of child abuse. And the crisis center representative's belief that Lindsey had followed the family to a safe shelter is relevant to the court's assessment of whether a defendant like Lindsey ought to serve his sentence in the jail, on a term of probation, rather than in the more secure setting of a prison. Indeed, Lindsey himself does not challenge the relevance of these statements, nor does he claim that the statements were unreliable or inaccurate. *Cf. id.* (concluding that the district court did not abuse its discretion in considering evidence of the defendants' sexual abuse of their children while sentencing them on physical abuse convictions because the evidence "had indicia of reliability and was relevant in sentencing").

¶22 Rather, Lindsey's only complaint about the court's consideration of the letters is that they "had the potential to be highly inflammatory and prejudicial" and that because they were "presented to the defense on the day of sentencing," it was "extremely difficult to present rebuttal evidence." But although Lindsey seems to be making a claim of surprise, implicating his

right to due process, Lindsey has not offered any explanation of what evidence he could have presented to rebut the statements had he had an opportunity to do so, nor has he identified any other specific harm from the late notice.[4] *See Salt Lake City v. Almansor*, 2014 UT App 88, ¶ 11, 325 P.3d 847 (explaining that to demonstrate that the failure to allow an opportunity to present additional evidence was harmful, an appellant must address the anticipated content of that evidence and demonstrate how it would have supported his position); *cf. State v. Creviston*, 646 P.2d 750, 752 (Utah 1982) (affirming the denial of a motion for continuance on the basis that the defendant had failed to show that the testimony he sought to present was material and admissible when he had claimed only that the missing witness's testimony was "'vital'" and was expected to be beneficial to him but did not provide any information about what the witness would say). Thus, Lindsey has not demonstrated that he was harmed by any unfair surprise stemming from the prosecutor's reading the letters. *See* Utah R. Crim. P. 30(a) (explaining that the appellant must show that his "substantial rights" were affected to warrant a remedy on appeal).

---

4. We note, as well, that Lindsey did not request a continuance in the district court, despite the court's indication that it would be willing to consider such a request. In response to Lindsey's objection to the court's consideration of the letters, the court said if it "determine[d] that there's something here that would be a surprise to [Lindsey]," the court would afford him "a chance to present evidence to counter it." The failure to seek a continuance can be fatal in and of itself to Lindsey's "surprise" claim because the failure to seek appropriate relief in the district court results in a failure to properly preserve the claim. *See, e.g.*, *Salt Lake City v. Almansor*, 2014 UT App 88, ¶ 10, 325 P.3d 847 (concluding that the defendant had failed to preserve his claim that the trial court abused its discretion in proceeding to trial even though a defense witness was not present because the defendant had not sought a continuance).

IV. Conclusion

¶23   In summary, Lindsey has not demonstrated that the district court abused its discretion in denying his motion for a continuance to obtain the PSI or in making its decision to sentence him to prison. He also has not demonstrated that the prosecutor breached the plea agreement, a precondition for each of his claims relating to the performance of the plea agreement. Finally, he has not shown that the district court abused its discretion in considering written submissions from three people who were not victims of his offense. As a result, we affirm his sentence.

———————